## IN THE UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF ILLINOIS
## URBANA DIVISION

| | | |
|---|---|---|
| TERRENCE HAYNES, | ) | |
| | ) | Case No. |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| FRANK ASTRELLA, MICHAEL JENEARY, | ) | |
| KANKAKEE COUNTY STATE'S ATTORNEY'S | ) | |
| OFFICE, COUNTY OF KANKAKEE, JAMIE | ) | |
| BOYD, KANKAKEE COUNTY PUBLIC | ) | |
| DEFENDER'S OFFICE, KENNETH LOWMAN, | ) | |
| SAMUEL MILLER, SUSAN WAGNER, and | ) | |
| CITY OF KANKAKEE, | ) | |
| | ) | |
| Defendants. | ) | |

## COMPLAINT

Plaintiff Terrence Haynes, through his attorneys Hale & Monico, complaining of Defendants Frank Astrella, Michael Jeneary, the Kankakee County State's Attorney's Office, the County of Kankakee, Jamie Boyd, the Kankakee County Public Defender's Office, Kenneth Lowman, Samuel Miller, Susan Wagner, and the City of Kankakee and states as follows:

## <u>INTRODUCTION</u>

**1.**     On June 3, 2019, Plaintiff finally succeeded in his 20-year fight to prove his innocence and a two-decade nightmare finally ended. On that date, the Kankakee County State's Attorney's Office formally moved to dismiss all criminal charges against Plaintiff for the 1999 shooting of Cezaire Murrell.

**2.**     Plaintiff's fight had its highs and lows; mostly lows given the evidence fabricated and hidden by law enforcement officers, sheer incompetence of his criminal trial attorney,

and severe prosecutorial misconduct by the trial assistant state's attorneys. But finally, after eighteen years, one month, and twenty-five days in custody and six appeals, the criminal charges were dismissed and Plaintiff was finally a free man.

**3.**     Plaintiff brings this lawsuit to not only try to remedy the wrong inflicted upon him but to bring light to the broken criminal justice system that led to his wrongful conviction, with the desire of not only remedying the situation but to provide hope for anyone else who was similarly wrongfully convicted by a system set up to fail.

## PARTIES

**4.**     Plaintiff Terrence Haynes was, during the relevant time, a resident of Kankakee, Illinois.

**5.**     Defendant Frank Astrella was, during the relevant time, an assistant state's attorney with the Kankakee County State's Attorney's Office and was, during the relevant time, acting within the scope of his employment and/or agency with the State's Attorney's Office and was acting under color of law. Defendant Astrella is sued in his individual capacity.

**6.**     Defendant Michael Jeneary was, during the relevant time, an assistant state's attorney with the Kankakee County State's Attorney's Office and was, during the relevant time, acting within the scope of his employment and/or agency with the State's Attorney's Office and was acting under color of law. Defendant Jeneary is sued in his individual capacity.

**7.**     Defendant Kankakee County State's Attorney's Office was, during the relevant time, the employer of Defendants Astrella and Jeneary, who acted within the scope of

their employment and/or agency. Defendant Kankakee County State's Attorney's Office is named as a party pursuant to the legal theory of *Respondeat Superior*.

8.      Defendant County of Kankakee is a municipal corporation organized and doing business under the laws of the State of Illinois. Defendant County of Kankakee is named as a party pursuant to the indemnification requirements of 745 ILCS 10/9-102.

9.      Defendant Jamie Boyd was, during the relevant time, an assistant with the Kankakee County Public Defender's Office and acted within the scope of his employment and/or agency and under color of state law. Defendant Boyd is sued in his individual capacity.

10.     Defendant Kankakee County Public Defender's Office was, during the relevant time, the employer of Defendant Boyd, who acted within the scope of his employment and/or agency. Defendant Kankakee County Public Defender's Office is named as a part pursuant to the legal theory of *Respondeat Superior*.

11.     Defendant Kenneth Lowman was, during the relevant time, a sworn law enforcement officer with the Kankakee Police Department. Defendant Lowman acted within the scope of his employment and/or agency of Defendant City of Kankakee and under color of law. Defendant Lowman is sued in his individual capacity.

12.     Defendant Samuel Miller was, during the relevant time, a sworn law enforcement officer with the Kankakee Police Department. Defendant Miller acted within the scope of his employment and/or agency of Defendant City of Kankakee and under color of law. Defendant Miller is sued in his individual capacity.

13.     Defendant Susan Wagner was, during the relevant time, a sworn law enforcement officer with the Kankakee Police Department. Defendant Wagner acted within the scope

of her employment and/or agency of Defendant City of Kankakee and under color of law. Defendant Wagner is sued in her individual capacity.

14.     Defendant City of Kankakee is a municipal corporation organized and doing business under the laws of the State of Illinois. During the relevant time, Defendant City of Kankakee employed Defendants Lowman, Miller, and Wagner as sworn law enforcement officers with the Kankakee Police Department. Defendant City of Kankakee is named as a party pursuant to the indemnification requirements of 745 ILCS 10/9-102.

## JURISDICTION AND VENUE

15.     This action arises under the Constitution of the United States, particularly the Fourth and Fourteenth Amendments, under the laws of the United States, particular Title 42 of the United States Code, Sections 1983 and 1988 (commonly known as the Civil Rights Act), and under the laws of the State of Illinois.

16.     The jurisdiction of this Court is invoked under the provisions of Title 28 of the United States Code, Sections 1331 and 1343. Plaintiff also invokes the supplemental jurisdiction of this Court pursuant to Title 28 of the United States Code, Section 1367.

17.     Venue is proper in the United States District Court for the Central District of Illinois, Urbana division, under Title 28 of the United States Code, Section 1391(b)(2), as the events complained of occurred within this district.

## FACTS

18.     On May 27, 1999, at approximately 7:00 PM, Plaintiff was sitting on a porch, located at 516 South Greenwood in Kankakee, Illinois.

**19.**     Willie Turner and Darryl Haynes – Petitioner's cousin – were also sitting on the porch. Gary Hammond, Jackie Speed, and two others were standing on the sidewalk leading to the porch.

**20.**     Marcus Hammond was also in front of the house.

**21.**     Earlier that day, Cezaire Murrell had called Plaintiff's brother Jamiko Bates. Murrell directed Bates to tell "his guys" to pay Murrell $3,000-4,000 or that something bad was going to happen. Bates relayed this threat to Plaintiff.

**22.**     Murrell also turned up at Petitioner's residence. He pounded on the door and screamed death threats.

**23.**     The threat from Murrell was not the first, Murrell was stalking Petitioner for at least a week before the confrontation on the porch on May 17, 199. Indeed, approximately one a week prior, Murrell had physically attacked Petitioner – striking and kicking him – in a Foot Locker store. A Foot Locker employee called security to stop the unprovoked beating. Not only that, but Murrell had a reputation for violence and was known to be willing to commit acts of violence against others with little or no provocation.

**24.**     Murrell went to the home of Debra Williams. Murrell stated that he was going to confront another person over an alleged debt. Murrell then raised his shirt and Debra Williams observed that Murrell had a firearm in his waistband. Murrell then walked away from Williams' house.

**25.**     Murrell then walked away – to 516 South Greenwood.

**26.**     Murrell approached Plaintiff, who was still standing on the porch, and demanded money in a loud, argumentative manner.

**27.**     Plaintiff denied owing Murrell any money. Murrell was not pleased with Plaintiff sticking up for himself.

**28.**   Murrell made a movement as to physically strike Plaintiff.

**29.**   Willie Turner then attempted to defuse the situation by speaking to Murrell. He walked the combative Murrell off the porch and onto the sidewalk.

**30.**   Murrell then raised his shirt and showed his gun to Plaintiff while stating that he was going to kill Plaintiff.

**31.**   Understandably terrified that Murrell would make good on his threat, Plaintiff picked up a firearm that belonged to Gary Hammond.

**32.**   Suddenly, Murrell broke free from Turner and ran back towards the porch.

**33.**   Murrell lunged at Plaintiff while simultaneously pulling his firearm from his waistband.

**34.**   With Murrell within four to five feet and reaching for his gun, Plaintiff pulled the gun from his back pocket, closed his eyes, and fired twice at Murrell in defense of his own life.

**35.**   Both shots struck Murrell, who stumbled off the porch and fell onto the grass.

**36.**   As he stumbled, Murrell had his gun in his right hand.

**37.**   Turner picked up Murrell's gun and took Plaintiff's gun.

**38.**   Darryl Haynes, Marcus Hammond, and Jackie Speed had all observed Murrell with the firearm prior to the shooting. Further, Gary Hammond observed a firearm in Murrell's hand immediately after the shooting.

**39.**   Notwithstanding the fact that his actions were entirely in self-defense, Plaintiff was fearful of retaliation by Murrell's family and so left the scene.

### *Fabricated Police Reports by Kankakee Police Officers*

**40.**   After the shooting, numerous police officers with the Kankakee Police Department arrived at 516 South Greenwood.

**41.**   Marcus Hammond informed the officers that he had observed the shooting and spoke to Defendant Wagner. He was taken to a police station, where he was interviewed by Defendant Lowman.

**42.**   Defendant Wagner drafted a report purporting to memorialize the conversation she had with Marcus. Defendant Wagner's report omitted the fact that Marcus had observed Murrell with a firearm and that Plaintiff acted in self-defense.

**43.**   Marcus told Defendant Lowman that he had observed Murrell run up the stairs to the porch with his hand to his side, reaching for a weapon, and that was when Plaintiff shot Murrell.

**44.**   Defendant Lowman drafted a statement that omitted Marcus' comment that Murrell was armed and reaching for a gun when Petitioner fired. Instead, Defendant Lowman's report included a statement that Plaintiff had racked the gun and then fired twice at Murrell, who was not armed. Defendant Lowman's report was false.

**45.**   Defendant Lowman then had Marcus Hammond – who was eleven years old – sign the statement.

**46.**   On June 1, 1999, Defendant Lowman spoke to Gary Hammond, who stated that he had observed Murrell with a handgun after the shooting. Defendant Lowman created a report with that information.

**47.**   Defendant Lowman and another officer spoke to Gary Hammond a second time, on October 20, 1999. Gary Hammond told them a second time that he had observed

Murrell reaching under his shirt prior to the shooting and that he observed Murrell with a firearm in his hand immediately after the shooting. Gary Hammond further told the police officers that the shooting was in self-defense and Murrell had approached Plaintiff trying to shoot him.

48.     Defendant Lowman and the other officer then created a second report which documented that Gary Hammond stated "Then I heard (2) gunshots and I saw Murrell start to fall and he grabbed the banister with one hand, holding himself up, and with the other hand he pulled out a small black .380 out of his waistband."

49.     Defendant Lowman's report was false – Gary Hammond never stated that he observed Murrell pull the firearm out of his waistband after the shooting.

50.     Defendant Miller interviewed Darryl Haynes on June 3, 1999. Darryl Haynes told Defendant Miller that he had observed Murrell with a firearm out of his waistband when Plaintiff fired twice.

51.     Defendant Miller's report, however, attributed a statement to Darryl Haynes that "Terrence shot Ceziare twice before he could get the gun out of his waistband. ... After Terrence shot Ceziare, Ceziare still tried to pull the gun out. That is when Terrence took the gun out of his (Ceziare's) waist band and ran." This statement attributed to Darryl Haynes by Defendant Miller was false.

52.     Based on the falsified reports that Murrell was not armed at the time of the shooting, Plaintiff was arrested and charged with the First-Degree Murder of Murrell.

### Concealed Evidence by State's Attorneys Astrella and Jeneary

**53.** Within several days of the shooting, Marcus Hammond met with Defendant Astrella. At this time, Defendant Astrella was performing the same function normally performed by a police officer, which was investigation the facts of the shooting.

**54.** Marcus informed Defendant Astrella that Plaintiff had fired in self-defense.

**55.** Defendant Astrella did not want to hear that Plaintiff had fired in self-defense and ignored Marcus' statements.

**56.** A second assistant state's attorney was assigned to the investigation of the Murrell shooting – Defendant Jeneary.

**57.** Marcus Hammond and Defendant Jeneary were first cousins who saw each other at family events. Indeed, prior to Plaintiff's trial, Marcus and Defendant Jeneary attended a Christmas party at a relative's house.

**58.** Defendant Jeneary informed Defendant Astrella that he and Marcus were cousins.

**59.** Defendant Astrella instructed Defendant Jeneary to not disclose the family relationship between the prosecuting attorney and the only eyewitness that would eventually be called during the trial.

**60.** Defendant Astrella's and Defendant Jeneary's actions in hiding this relationship not only violated their responsibilities under *Brady v. Maryland* but also Illinois Rules of Professional Conduct.

**61.** Further, prior to trial, Marcus Hammond repeated his statement to Defendants Astrealla and Jeneary that Murrell had a firearm and Plaintiff acted in self-defense. These two defendants, states attorneys who have a sacred obligation to seek justice and not

merely to convict, instructed Marcus Hammond to lie on the stand in order to convict Plaintiff.

### *Legal Malpractice by Defendant Jamie Boyd*

**62.** Plaintiff was assigned a public defender to represent him – Defendant Boyd.

**63.** The Illinois Rules of Professional Conduct require that an attorney provide competent representation to a client; this means the legal knowledge, skill, thoroughness, and preparation reasonably necessary to act as their client's advocate.

**64.** Defendant Boyd was not competent in his representation of Plaintiff.

**65.** From the outset, Plaintiff's entire legal strategy was self-defense. Indeed, Plaintiff has never denied shooting Murrell but has been steadfast in his belief that the shooting was only done to save his own life.

**66.** Notwithstanding the self-defense strategy, Defendant Boyd undertook no steps to zealously represent Plaintiff in his criminal proceeding.

**67.** Defendant Boyd did not interview any of the witnesses personally – not even those who told police that Murrell had a gun and Plaintiff acted in self-defense.

**68.** Defendant Boyd did not even request any of his staff to interview those same witnesses.

**69.** Darryl Haynes, Gary Hammond Junior, Jackie Speed, and Toya Williams would have all supported Plaintiff's legal strategy of self-defense and yet Defendant Boyd did not contact any of them.

**70.** Sadly, none of those witnesses were called by Defendant Boyd to support Plaintiff's claim of self-defense.

*Plaintiff's Criminal Trial*

**71.**    Petitioner's criminal trial commenced on August 8, 2000 and concluded on August 16, 2000.

**72.**    During trial, Marcus Hammond – per the instructions from Defendants Astrella and Jeneary – falsely testified that Murrell was unarmed at the time of the shooting under direct questioning by Defendant Astrella. Based on the prior statements, Defendant Astrella knew Marcus' testimony was false.

**73.**    Defendant Astrella further knew that multiple witnesses had given statements to police that Murrell was armed with a gun on March 27, 1999. Despite this, Defendant Astrella continuously argued throughout trial that Petitioner had shot an unarmed man. Defendant Astrella knew his statements that Murrell was unarmed at the time of the shooting were false.

**74.**    Defendant Astrella's conduct in concealing evidence, making false statements to the jury, offering evidence he knew to be false, and prosecuting Plaintiff for the crime of First-Degree Murder violated the Illinois Rules of Professional Conduct and Plaintiff's constitutional rights.

**75.**    Defendant Jeneary's conduct in concealing his relationship with Marcus Hammond – the sole eyewitness offered by the State against Plaintiff – and failure to disclose the contrary statements made by Marcus Hammond prior to trial or correct the record when Marcus Hammond testified falsely violated the Illinois Rules of Professional Conduct and Plaintiff's constitutional rights.

**76.**     Due to the perjured testimony, fabricated police reports, and concealed evidence, Plaintiff was convicted by the jury of First-Degree Murder of Cezaire Murrell on August 16, 2000.

**77.**     On November 17, 2000, Plaintiff was sentenced to 45 years imprisonment and Plaintiff's long road to proving his innocence began when he filed a *pro se* motion based on the woefully deficient representation by Defendant Boyd.

### *Appellate and Post-Conviction Litigation*

**78.**     On direct appeal, the appellate court reversed the trial court's ruling denying Plaintiff's post-trial claims that his trial counsel was ineffective. *People v. Haynes*, 331 Ill.App.3d 482 (3d Dist. 2002).

**79.**     On remand, Plaintiff's new counsel filed a motion for a new trial, alleging that Plaintiff's prior trial counsel was ineffective. The trial court denied Plaintiff's motion after a hearing; the appellate court affirmed this decision. *People v. Haynes*, 2011 IL App (3d) 090513-U.

**80.**     On January 29, 2008, in the midst of proceedings on Plaintiff's post-remand direct appeal, Plaintiff filed a *pro se* petition under 725 ILCS 5/2-1401 for relief from judgment on the basis of the family relationship between Defendant Jeneary and Marcus Hammond.

**81.**     Plaintiff's *pro se* petition requested a new trial, arguing that (1) Marcus Hammond's testimony was the only testimony that refuted the defense theory of the incident as self-defense; and (2) Plaintiff was unable to effectively cross-examine Marcus Hammond as to bias and motive as a result of the State's failure to disclose the relationship between Marcus and Defendant Jeneary.

**82.**    It is undisputed that Marcus Hammond and Defendant Jeneary are first cousins, they had attended family events together, and that relationship was not disclosed to Plaintiff prior to his conviction.

**83.**    The trial court dismissed Plaintiff's 2-1401 motion *sua sponte* on February 14, 2008.

**84.**    Plaintiff appealed, and the appellate court remanded for further proceedings.

**85.**    Following the State's answer to Plaintiff's 2-1401 petition, the trial court again dismissed the petition.

**86.**    The appellate court affirmed in a two-to-one decision. *People v. Haynes*, 2013 IL App (3d) 100758-U. The majority declined to find a due process violation based on the withholding of Defendant Jeanery's relationship with Marcus Hammond, concluding that there was insufficient evidence that the result of the proceedings would have been different without evidence that Defendant Jeneary had colluded against Plaintiff. *Id.* at ¶ 14. The dissent would have found—solely based upon the State's failure to disclose Defendant Jeanery's relationship with Marcus Hammond—that there was a reasonable probability that the outcome of the trial would have been different. *Id.* at ¶ 14. The dissent noted that Marcus was an 11-year-old boy with his cousin sitting at the prosecution table, and thus could be "suggestible and eager to please." *Id.*

**87.**    While the 2-1401 appeal was pending, on November 16, 2012, Plaintiff filed the *pro se* post-conviction petition that was the precursor to his final Verified Amended Post-Conviction Petition.

**88.**    Included in the *pro se* post-conviction petition was a claim that Plaintiff was denied a fair trial and due process where the prosecutors suborned perjury when Marcus

Hammond testified that the victim, Murrell, was unarmed at the time that Petitioner shot him.

**89.** This claim was supported by an affidavit from Marcus Hammond stating that Defendant Jeneary was his cousin and that he was instructed not to tell the court that the victim was armed. Plaintiff also included in his *pro se* post-conviction petition an affidavit from Debra Williams stating that she had seen Murrell with a firearm immediately prior to the shooting.

**90.** The trial court dismissed the *pro se* post-conviction petition in a written decision dated December 7, 2012 and the court denied Plaintiff's motion to reconsider.

**91.** The Illinois Court of Appeals reversed and remanded with instructions to appoint post-conviction counsel and conduct second stage post-conviction proceedings. *People v. Haynes*, 2015 IL App (3d) 130091, ¶ 20. In so ruling, the appellate court held that if it were true that a prosecutor instructed Marcus Hammond to lie, it "in effect renders Hammond's *entire* testimony unreliable" and "[v]iewing the totality of the circumstances, we hold Hammond's entire trial testimony is unreliable." *Id.* at ¶ 17.

**92.** On Jun 26, 2016, the trial court conducted an evidentiary hearing relating to Plaintiff's post-conviction claims.

**93.** Following the evidentiary hearing, the trial court again denied Petitioner's post-conviction petition.

**94.** Plaintiff again appealed the trial court's decision. The Appellate Court reversed and ordered that Plaintiff be granted a new trial. *People v. Haynes*, 2018 IL App (3d) 170050-U.

**95.** On June 3, 2019, the State moved to dismiss all charges against Plaintiff with prejudice. On that date, Plaintiff was a free man for the first time in nearly twenty years.

**96.**     On August 1, 2019, Plaintiff was granted a certificate of innocence by the same trial court judge who had previously denied all of his post-conviction proceedings. The Kankakee State's Attorney did not oppose Plaintiff's petition.

## CLAIMS
### COUNT I – 42 USC § 1983
### FOURTH AMENDMENT POST-LEGAL PROCESS

**97.**     Each paragraph of this Complaint is incorporated as if restated fully herein.

**98.**     Defendants Lowman, Miller, and Wagner fabricated police reports and concealed exculpatory evidence from Plaintiff. These fabricated reports and concealed evidence subjected Plaintiff to criminal proceedings for which there was no probable cause.

**99.**     Defendant Astrealla concealed exculpatory evidence from Plaintiff in the form of Marcus Hammond's statement. This concealed evidence subjected Plaintiff to criminal proceedings for which there was no probable cause.

**100.**    The actions of Defendants Lowman, Miller, Wagner, and Asrella in fabricating and concealing evidence to subject Plaintiff to criminal proceedings that were not supported by probable cause violated Plaintiff's rights under the Fourth Amendment to the United States Constitution and 42 U.S.C. § 1983.

**101.**    As a result of the unreasonable seizure, Plaintiff suffered injury.

WHEREFORE, Plaintiff prays for judgment against Defendants Lowman, Miller, Wagner, and Astrella, an award of compensatory damages, punitive damages, attorneys' fees, costs, and for any additional relief that is just and proper.

### COUNT II – 42 USC § 1983
### FOURTEENTH AMENDMENT – DUE PROCESS
### EXCULPATORY AND FABRICATED EVIDENCE

**102.**    Each paragraph of this Complaint is incorporated as if restated fully herein.

**103.**   Defendants Lowman, Miller, and Wagner fabricated police reports and concealed exculpatory evidence from Plaintiff. These fabricated reports and concealed evidence subjected Plaintiff to criminal proceedings for which there was no probable cause. These fabricated allegations against Plaintiff caused a deprivation of liberty.

**104.**   The actions of Defendants Lowman, Miller, and Wagner violated Plaintiff's Due Process rights under the Fourteenth Amendment to the United States Constitution and 42 U.S.C. § 1983.

**105.**   Defendant Astralla concealed exculpatory evidence from Plaintiff in the form of Marcus Hammond's statement. This concealed evidence subjected Plaintiff to criminal proceedings for which there was no probable cause. This action against Plaintiff caused an unreasonable deprivation of liberty.

**106.**   Defendants Astrella and Jeneary concealed the family relationship between Defendant Jeneary and Marcus Hammond, the sole eyewitness to the shooting. The formation of this concealment did not occur in the prosecutorial phase of the criminal proceeding, rather, it manifested during the investigatory phase. In fact, Defendant Jeneary's blood relationship to Marcus Hammond started long before he became a prosecutor and his attending holiday parties with Marcus was not part of the criminal proceeding. Their actions subjected Plaintiff to an unreasonable deprivation of liberty.

**107.**   The actions of Defendants Astrella and Jeneary in ignoring their responsibility to seek justice and not merely convictions shocks the conscience and violated Plaintiff's Due Process rights under the Fourteenth Amendment to the United States Constitution and 42 U.S.C. § 1983.

**108.**   The actions of Defendants Lowman, Miller, Wagner, and Asrella in fabricating and concealing evidence to subject Plaintiff to criminal proceedings that were not supported

by probable cause violated Plaintiff's rights under the Fourth Amendment to the United States Constitution and 42 U.S.C. § 1983.

**109.**   As a result of this conduct, Plaintiff suffered injury.

WHEREFORE, Plaintiff prays for judgment against Defendants Lowman, Miller, Wagner, Astrella, and Jeneary, an award of compensatory damages, punitive damages, attorneys' fees, costs, and for any additional relief that is just and proper.

## COUNT III – ILLINOIS STATE LAW
## MALICIOUS PROSECUTION

**110.**   Each paragraph of this Complaint is incorporated as if restated fully herein.

**111.**   Police officers with the Kankakee Police Department subjected Plaintiff to criminal charges for which there was no probable cause.

**112.**   This was done by way of fabricated and concealed evidence, indicating malice.

**113.**   The criminal proceedings were terminated in a manner indicative of Plaintiff's innocence.

**114.**   During the relevant time, these police officers acted within the scope of their employee with Defendant City of Kankakee.

**115.**   Plaintiff suffered injury due to this conduct.

WHEREFORE, Plaintiff prays for judgment against Defendant City of Kankakee, an award of compensatory damages, costs, and for any additional relief that is just and proper.

## COUNT IV – ILLINOIS STATE LAW
## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

**116.**   Each paragraph of this Complaint is incorporated as if restated fully herein.

**117.** Police officers with the Kankakee Police Department subjected Plaintiff to criminal charges for which there was no probable cause. This was done by way of fabricated and concealed evidence, indicating malice.

**118.** Defendant Astrella instructed an eyewitness to lie so he could convict Plaintiff of First Degree Murder. This was done with malice.

**119.** The conduct of the police officers and Defendant Astrella was extreme and outrageous and with an intent to cause or a reckless disregarding of the probability of causing emotional distress.

**120.** Plaintiff spent nearly twenty years in prison for a crime he did not commit, suffering emotional distress directly caused by the actions of these Defendants.

**121.** During the relevant time, Defendant Astrella was an employee of the Kankakee State's Attorney's Office, which is responsible for Defendant Astrella's conduct under the theory of *Respondeat Superior*.

WHEREFORE, Plaintiff prays for judgment against Defendant City of Kankakee, Defendant Astrella, and Defendant Kankakee State's Attorney's Office, an award of compensatory damages, costs, and for any additional relief that is just and proper.

## COUNT V – ILLINOIS STATE LAW LEGAL MALPRACTICE

**122.** Each paragraph of this Complaint is incorporated as if restated fully herein.

**123.** Defendant Boyd had an attorney-client relation with Plaintiff and a duty to defend him in the criminal proceedings.

**124.** Defendant Boyd acted negligently when he failed to interview key witnesses that would have supported Plaintiff's self-defense theory, failed to have his investigative team interview those same witnesses, and failed to call any of those witnesses during Plaintiff's

criminal trial. In short, despite a plethora of witnesses who would have supported Plaintiff's self-defense strategy, Defendant Boyd called none of them. This was a breach of Defendant Boyd's duty to Plaintiff.

**125.**   Defendant Boyd's failure to call any of those witnesses was a proximate cause of Plaintiff's wrongful incarceration for a crime he did not commit.

**126.**   Defendant Boyd's conduct was willful and wanton in that he acted in a course of action which showed an actual or deliberate intention to harm and/or an utter indifference to or conscious disregard to Plaintiff's safety.

**127.**   As a result of the conduct, Plaintiff spent twenty years in prison until finally being freed.

**128.**   During the relevant time, Defendant Boyd was an employee of the Kankakee Public Defender's Office, which is responsible for Defendant Boyd's conduct under the theory of *Respondeat Superior*.

WHEREFORE, Plaintiff prays for judgment against Defendants Boyd and the Kankakee Public Defender's Office, an award of compensatory damages, costs, and for any additional relief that is just and proper.

**COUNT VI – ILLINOIS STATE LAW
INDEMNIFICATION**

**129.**   Each paragraph of this Complaint is incorporated as if restated fully herein.

**130.**   During the relevant time, Defendants Lowman, Miller, and Wagner were employees of Defendant City of Kankakee and acted within the scope of their employment.

**131.**  Pursuant to Illinois law, Defendant City of Kankakee is required to indemnify any employee for any judgment against them for acts or omissions done within the scope of their employment.

**132.**  During the relevant time, Defendants Astrella and Jeneary were employees of Defendant Kankakee County State's Attorney's Office and acted within the scope of their employment.

**133.**  Pursuant to Illinois law, Defendant Kankakee County State's Attorney's Office is required to indemnify any employee for any judgment against them for acts or omissions done within the scope of their employment.

**134.**  Illinois law further requires that Kankakee County pay any tort judgment for compensatory damages against a state employee where the County funds the state office that employs the tortfeasor. The Kankakee County State's Attorney's Office is funded by Defendant Kankakee County.

**135.**  During the relevant time, Defendant Boyd was an employee of Defendant Kankakee County Public Defender's Office and acted within the scope of his employment.

**136.**  Pursuant to Illinois law, Defendant Kankakee County Public Defender's Office is required to indemnify any employee for any judgment against them for acts or omissions done within the scope of their employment.

**137.**  Illinois law further requires that Kankakee County pay any tort judgment for compensatory damages against a state employee where the County funds the state office that employs the tortfeasor. The Kankakee County Public Defender's Office is funded by Defendant Kankakee County.

WHEREFORE, Plaintiff prays for judgment against Defendants City of Kankakee and Kankakee County and that they be made to indemnify any employees found liable for actions committed during the scope of their employment and for an award of compensatory damages and attorneys' fees.

## **JURY DEMAND**

Plaintiff demands a jury trial on all issues so triable.

Respectfully submitted,
By: */s/ Shawn W. Barnett*
Shawn W. Barnett, Atty. No. 6312312
One of the Attorneys for Plaintiff

HALE & MONICO LLC
Andrew M. Hale
Shawn W. Barnett
53 West Jackson, Suite 357
Chicago, IL 60604
(312) 870-6905