E-FILED
Tuesday, 14 January, 2020  03:17:01 PM
Clerk, U.S. District Court, ILCD

## IN THE UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF ILLINOIS
## URBANA DIVISION

| | | |
|---|---|---|
| TERRENCE HAYNES, | ) | |
| | ) | Case No. 19-CV-2296 |
| Plaintiff, | ) | |
| | ) | Judge Colin Stirling Bruce |
| v. | ) | |
| | ) | |
| FRANK ASTRELLA, et al., | ) | |
| | ) | |
| Defendants. | ) | JURY TRIAL DEMANDED |

## CITY DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT
## OF THEIR RULE 12(b)(6) MOTION TO DISMISS THE COMPLAINT

Date: January 14, 2020

Respectfully submitted,

/s/ Laura M. Ranum
LAURA M. RANUM, Attorney No. 6300636
*One of the Attorneys for Defendants City of
Kankakee and Defendant Officers Kenneth
Lowman, Samuel Miller and Susan Wagner*

James G. Sotos
Jeffrey R. Kivetz
Laura M. Ranum
THE SOTOS LAW FIRM, P.C.
141 W. Jackson Blvd, #1240A
Chicago, IL 60604
(630) 735-3300
lranum@jsotoslaw.com

# TABLE OF CONTENTS

**PAGE**

INTRODUCTION ..................................................................................................................1

ALLEGATIONS OF FACT .................................................................................................2

    The Fatal Shooting of Cezaire Murrell ............................................................................2

    Kankakee Police Investigation into Murrell's Death .......................................................3

    Plaintiff's Criminal Proceedings .....................................................................................4

LEGAL STANDARD ..........................................................................................................5

ARGUMENT .......................................................................................................................6

I.    **Plaintiff's Fourth Amendment Claim (Count I) and Malicious
Prosecution Claim (Count III) Are Defeated by Probable Cause** ................................6

    A.    Irrefutable Probable Cause Existed that Plaintiff Murdered Cezaire Murrell. .......6

    B.    Alternatively, Defendants are Entitled to Qualified Immunity For Count I. ...........9

II.    **Plaintiff Has Not Pled a Violation of His Due Process Right to a Fair Trial
Under the Fourteenth Amendment (Count II)** ...........................................................10

    Table Summary of Allegations re: Officer Reports .........................................................11

    A.    Plaintiff Fails to State a *Brady* Violation .............................................................12

    B.    Plaintiff Fails to State a Fabrication of Evidence Claim .........................................14

III.    **Plaintiff's State Law Claim of Intentional Infliction of Emotional Distress
Fails to State a Claim (Count IV)** ..............................................................................18

    A.    Count IV is Time-Barred .......................................................................................18

    B.    Count IV Otherwise Fails to State a Claim .............................................................18

IV.    **Indemnification (Count VI)** ......................................................................................19

CONCLUSION ..................................................................................................................19

## TABLE OF AUTHORITIES

**CASE**                                                                                                    **PAGE**

*188 LLC v. Trinity Industries, Inc.,* 300 F.3d 730 (7th Cir. 2002) ................................................17

*Anderson v. Creighton*, 483 U.S. 635 (1987) ...........................................................................10

*Andersen v. Village of Glenview*, 17-CV-5761, 2018 WL 6192171 at *7
(N.D. Ill. Nov. 28, 2018).............................................................................................................6

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ......................................................................................5

*Askew v. Chicago*, 440 F.3d 894 (7th Cir. 2006).....................................................................7, 8

*Beck v. Ohio*, 379 U.S. 89 (1964) ..............................................................................................6

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) ......................................................................5

*Brady v. Maryland*, 373 U.S. 83 (1963) ..............................................10, 12, 13, 14, 15, 17

*Bridewell v. Eberle*, 730 F.3d 672 (7th Cir. 2013) ..................................................................18

*Carvajal v. Dominguez*, 542 F.3d 561 (7th Cir. 2008) .........................................................12, 13

*Coleman v. City of Chicago*, 09-CV-6700, 2011 WL 1542129, at *4
(N.D. Ill. April 22, 2011) ............................................................................................................8

*Coleman v. City of Peoria, et al.*, 925 F.3d 336 (7th Cir. 2019)..........................................6, 13, 14

*Cole v. Meeks, et al.*, No. 15-CV-1292, Dkt. No. 38 (C.D. Ill. Apr. 21, 2016) .....................16, 18

*Cooney v. Casady*, 746 F.Supp.2d 973 (N.D. Ill. Oct. 28, 2010) .................................................19

*District of Columbia v. Wesby,* 138 S.Ct. 577 (2018)..........................................................8, 9, 10

*Fields v. Wharrie*, 740 F.3d 1107 (7th Cir. 2014) ..................................................................15, 16

*Goudy v. Cummings*, 922 F.3d 834 (7th Cir. 2019)................................................................ 13-14

*Gramenos v. Jewel Companies, Inc.*, 797 F.2d 432 (7th Cir. 1986)................................................7

*Grayson v. City of Aurora*, No. 13-CV-1705, 2016 WL 199058 at *16
(N.D. Ill. Jan. 17, 2016) ............................................................................................................18

*Harris v. Kuba,* 486 F.3d 1010 (7th Cir. 2007) .........................................................................13

**TABLE OF AUTHORITIES**
**-Continued-**

<u>CASE</u>                                                                                    <u>PAGE</u>

*Heidelberg v. Manias, et al.,* 18-CV-1161, 2019 WL 4862069, *17
(C.D. Ill. March 26, 2019) ...........................................................................................16

*Hodgkins ex rel. Hodgkins v. Peterson*, 355 F.3d 1048 (7th Cir. 2004).........................8

*Houston v. Village of Calumet Park,* 16-CV-8646, 2019 WL 3386967, at *3
(N.D. Ill. July 26, 2019)................................................................................................6

*Humphrey v. Staszak*, 148 F.3d 719 (7th Cir. 1998)........................................................8

*Kaley v. U.S.*, 571 U.S. 320 (2014)..................................................................................6

*Kyles v. Whitley,* 514 U.S. 419 (1995).............................................................................13

*Lamb v. McMillen,* 16-CV-3004, 2016 WL 4706926, at *6 (C.D. Ill. Sept. 8, 2016)....7

*Lewis v. City of Chicago,* 914 F.3d 472 (7th Cir. 2019) ................................................15

*Maxwell v. City of Indianapolis*, 998 F.2d 431 (7th Cir. 1993)......................................6

*McBride v. Grice,* 576 F.3d 703 (7th Cir. 2009).............................................................8

*Mullenix v. Luna*, 136 S.Ct. 305 (2015)..........................................................................9

*Neita v. City of Chicago,* No. 19-CV-595, 2019 WL 5682838, at *3
(N.D. Ill. Nov. 1, 2019)..................................................................................................6

*Pavlik v. Kornhaber*, 326 Ill.App.3d 731 (1st Dist. 2001)...........................................18

*Pearson v. Callahan,* 555 U.S. 223 (2009)......................................................................9

*People v. Nix*, 479 N.E.2d 1147 (Ill. App. 3d Dist. 1985)............................................16

*Petty v. City of Chicago*, 754 F.3d 416 (7th Cir. 2014) ................................................12

*Powers v. Jumper*, 17-CV-4277, 2018 WL 8803956, at *1 (C.D. Ill. June 26, 2018) ................18

*R.J.R. Servs., Inc. v. Aetna Cas. & Sur. Co.*, 895 F.2d 279 (7th Cir. 1989) .............. 5-6

*Southerland v. Escapa*, No. 14-CV-3094, 2015 WL 1329969, at *5
(C.D. Ill. March 20, 2015) .............................................................................................9

**TABLE OF AUTHORITIES**
**-Continued-**

CASE                                                                    PAGE

*Stacey v. Peoria Cnty., Ill.*, 13-CV-1051, 2013 WL 3279997 at *5
(C.D. Ill. June 27, 2013) ...........................................................................10

*U.S. v. Earnest*, 129 F.3d 906 (7th Cir. 1997) ....................................12

*U.S. v. Lee*, 399 F.3d 864 (7th Cir. 2005) ...........................................12

*Virnich v. Vorwald*, 664 F.3d 206 (7th Cir. 2011) ................................5

*Whitlock v. Brueggemann*, 682 F.3d 567 (7th Cir. 2012) ..............15, 16

*Williamson v. Curran,* 714 F.3d 432 (7th Cir. 2013).........................6, 17


**STATUTE**                                                             **PAGE**

42 U.S.C. § 1983........................................................................9, 10, 19

745 ILCS 10/2–109....................................................................19

745 ILCS 10/9–102....................................................................19

FED. R. CIV. P. 12(b)(6)............................................................1, 5, 6

Defendants City of Kankakee and Defendant Officers Kenneth Lowman, Samuel Miller and Susan Wagner (collectively, "City Defendants"), by their attorneys, The Sotos Law Firm, P.C., submit this memorandum of law in support of their FED.R.CIV.P. Rule 12(b)(6) motion to dismiss Plaintiff's First Amended Complaint ("Complaint") and state:

## INTRODUCTION

In 1999, Terrence Haynes ("Plaintiff") shot and killed Cezaire Murrell. After shooting him, Plaintiff fled the scene and his associate took Murrell's gun. Plaintiff was subsequently identified as the shooter by three witnesses, two of whom police reported said Murrell had a gun, and the other of whom falsely testified for the State at trial that Plaintiff shot an unarmed man.[1] A Kankakee jury dismissed Plaintiff's assertions that he killed Murrell in self-defense, convicting him of First-Degree Murder. Since that time, the eyewitness who testified for the State at trial, Marcus Hammond, submitted an affidavit in post-conviction proceedings that Murrell had a gun and that Marcus previously told prosecutors this fact. Plaintiff's post-conviction proceedings earned him a new trial and ultimately, the State moved to *nolle presequi* the charges. The instant six-count lawsuit followed. The claims against the City and Defendant Officers Lowman, Miller and Wagner ("Defendant Officers") allege that Defendant Officers created false reports regarding their interviews with the three eyewitnesses, causing Plaintiff to be prosecuted without probable cause and denied a fair trial. The Complaint fails to state a claim against the City Defendants because the allegations establish irrefutable probable cause and no viable due process claim under the Fourteenth Amendment. As such, the Complaint should be dismissed in its entirety against the City Defendants.

---

[1] These allegations are set forth in Plaintiff's Complaint (Dkt. 12) and are accepted as true for purposes of the instant motion only.

## ALLEGATIONS OF FACT

### *The Fatal Shooting of Cezaire Murrell*

On May 27, 1999, Cezaire Murrell called Plaintiff's brother, Jamiko Bates, and told him to "tell 'his guys'" to pay Murrell $3,000-$4,000 or something bad would happen. (Dkt. 12 at ¶¶ 19, 22.) Bates relayed this threat to Plaintiff. (*Id.* at ¶ 22.) Murrell also turned up at Plaintiff's residence, pounded on the door and screamed death threats. (*Id*. at ¶ 23.) Murrell had a reputation for violence and the week prior had physically attacked Plaintiff in a Foot Locker store. (*Id.* at ¶ 24.) Also on May 27, Murrell went to the home of Debra Williams and she observed a firearm in his waistband before he walked away and walked toward 516 South Greenwood in Kankakee, Illinois. (*Id.* at ¶¶ 25-26.) Murrell told Williams he was going to confront someone over an alleged debt. (*Id.*) At approximately 7:00 p.m., Plaintiff, Darryl Haynes (Plaintiff's cousin), and Willie Turner were sitting on the porch of 516 South Greenwood and Marcus Hammond (sometimes referred to as Marcus), an 11 year old boy, was in front of the house. (*Id.* at ¶¶ 19-21, 46.) Gary Hammond (sometimes referred to as Gary), Jackie Speed, and two others were standing on the sidewalk leading to the porch. (*Id*. at ¶ 20.) Murrell approached Plaintiff and demanded money in a loud, argumentative voice. (*Id.* at ¶¶ 26-28.) Plaintiff denied owing him money. (*Id.* at ¶¶ 27-28.) When Murrell made a movement to physically strike Plaintiff, Turner attempted to defuse the situation by walking Murrell off the porch and onto the sidewalk. (*Id.* at ¶¶ 29-30.) Murrell raised his shirt, showed his gun to Plaintiff and stated he was going to kill him, causing Plaintiff to pick up a firearm belonging to Gary Hammond. (*Id.* at ¶¶ 31-32.)

Suddenly, Murrell broke free from Turner and ran back toward the porch, lunging at Plaintiff while simultaneously pulling his firearm from his waistband. (*Id.* at ¶¶ 33-34.) Murrell was within four to five feet and reaching for his gun when Plaintiff drew Gary's gun, allegedly closed his eyes and fired twice in self-defense, striking Murrell who stumbled off the porch and

2

fell onto the grass. (*Id.* at ¶¶ 35-36.) As Murrell stumbled, he had his gun in his right hand. (*Id.* at ¶ 37.) Darryl Haynes (sometimes referred to as Darryl), Marcus Hammond and Jackie Speed all observed Murrell with the gun prior to the shooting and Gary Hammond observed a gun in Murrell's hand immediately after the shooting. (*Id.* at ¶ 39.) Willie Turner picked up both guns and Plaintiff fled the scene. (*Id.* at ¶ 38, 40.)

### Kankakee Police Investigation into Murrell's Death

After the shooting, Kankakee police officers responded to 516 South Greenwood. (*Id.* at ¶ 41.) Marcus Hammond informed officers that he observed the shooting and spoke to Defendant Wagner. (*Id.* at ¶ 42.) Wagner drafted a report memorializing that conversation but omitted Marcus's observation of Murrell with a firearm and that Plaintiff acted in self-defense. (*Id.* at ¶¶ 42-43.) Marcus was taken to the police station and interviewed by Defendant Lowman. (*Id.* at ¶ 42.) Marcus allegedly told Defendant Lowman that he observed Murrell run up the stairs to the porch with his hand to his side, reaching for a weapon when Plaintiff shot Murrell. (*Id.* at ¶ 44.) Lowman drafted a statement omitting Marcus's comment that Murrell was armed and reaching for a gun, instead stating that Plaintiff racked the gun and fired twice at Murrell. (*Id.* at ¶ 45.) Plaintiff also alleges Lowman reported that Marcus stated Murrell was not armed. (*Id.* at ¶ 45.) However, as further described below, that allegation is belied by the report itself.[2] The statement was signed by Marcus Hammond. (*Id.* at ¶ 46.)

On June 1, 1999, Defendant Lowman spoke with Gary Hammond, who stated that he observed Murrell with a handgun after the shooting, which Lowman documented in a report. (*Id.* at ¶ 47.) Defendant Lowman spoke with Gary Hammond a second time on October 20, 1999, and

---

[2] As addressed in Sec. II(b), Defendants have attached the statement at issue which was drafted by Defendant Lowman and signed by Marcus Hammond to correct the misstatement in the First Amended Complaint that Defendant Lowman affirmatively documented Hammond as stating Murrell was not armed.

Gary relayed that he observed Murrell reaching under his shirt prior to the shooting and observed the firearm in Murrell's hand immediately after the shooting. (*Id.* at ¶ 48.) Defendant Lowman then created a second report which documented Gary Hammond as stating that he observed Murrell pull the firearm out of his waistband after he was shot. (*Id.* at ¶¶ 48-50.) Defendant Miller interviewed Darryl Haynes on June 3, 1999. (*Id.* at ¶ 51.) Darryl told Defendant Miller that he observed Murrell with a firearm out of his waistband when Plaintiff fired twice. (*Id.* at ¶ 51.) Defendant Miller drafted a report which documented Darryl as saying that Plaintiff shot Murrell twice before he could get the gun out of his waistband, even after being shot Murrell still tried to pull his gun out, and that Plaintiff then took Murrell's gun out of his waistband and ran. (*Id.* at ¶ 52.) Based on the aforementioned reports, Plaintiff was arrested and charged with First Degree Murder. (*Id.* at ¶ 53.)

### *Plaintiff's Criminal Proceedings*

Within several days of the shooting, Plaintiff alleges Marcus Hammond met with Defendant Assistant State's Attorney Frank Astrella and informed him that Plaintiff fired in self-defense. (*Id.* at ¶¶ 54-55.) Astrella ignored Marcus's statements. (*Id.* at ¶ 56.) A second Assistant State's Attorney, Defendant Michael Jeneary, was assigned to the Murrell investigation and was also the first cousin of witness Marcus Hammond. (*Id.* at ¶¶ 57-58.) When Defendant Astrella was informed of the familial relation, he allegedly instructed Defendant Jeneary not to disclose the relationship. (*Id.* at ¶¶ 59-60.) Prior to trial, Marcus repeated to Defendants Astrella and Jeneary that Murrell had a firearm and Plaintiff acted in self-defense, but Astrella and Jeneary allegedly instructed Marcus to lie on the stand. (*Id.* at ¶ 62.)

Plaintiff was assigned public defender Jamie Boyd to represent him. (*Id.* at ¶ 63.) Plaintiff never denied shooting Murrell but always maintained the shooting was only done to save his

4

own life, making his entire legal strategy self-defense. (*Id.* at ¶ 66.) Defendant Boyd was not competent in his representation of Plaintiff and took no steps to zealously represent Plaintiff. (*Id.* at ¶¶ 65-69.) Boyd did not interview witnesses or request his staff to interview witnesses. (*Id.* at ¶¶ 67-69.) Though Darryl Haynes and Gary Hammond would have supported Plaintiff's self-defense strategy, Defendant Boyd did not contact them or call them at trial. (*Id.* at ¶¶ 70-71.) Defendant Boyd acted negligently when he failed to interview or call at trial key witnesses who would have supported Plaintiff's self-defense theory. (*Id.* at ¶ 129.) Plaintiff's criminal trial commenced on August 8, 2000. (*Id.* at ¶ 72.) Marcus Hammond was the sole eyewitness offered by the State, and he falsely testified Murrell was unarmed at the time of the shooting. (*Id.* at ¶¶ 73, 76.) On August 16, 2000, Plaintiff was convicted of First-Degree Murder and on November 17, 2000, Plaintiff was sentenced to 45 years. (*Id.* at ¶¶ 77-78.) Following post-conviction proceedings, Plaintiff was granted a new trial. (*Id.* at ¶¶ 88-95.) On June 3, 2019, the State moved to dismiss all charges against Plaintiff. (*Id.* at ¶ 97.)

## LEGAL STANDARD

A motion to dismiss pursuant to FED. R. CIV. P. 12(b)(6) tests whether a Plaintiff has "state[d] a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible when the pleadings "allow[ ] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). While factual allegations are accepted as true, conclusory allegations that merely recite elements are not entitled to a presumption of truth, and the court need not strain to find favorable inferences which are not readily apparent. *Virnich v. Vorwald*, 664 F.3d 206, 212 (7th Cir. 2011). Moreover, the court is "not obliged to ignore any facts set forth in the complaint that undermine the plaintiff's claim[.]" *R.J.R. Servs., Inc. v. Aetna*

*Cas. & Sur. Co.*, 895 F.2d 279, 281 (7th Cir. 1989). Taking the facts pled by Plaintiff as a whole, Plaintiff has not stated a claim against any of the City Defendants.

## ARGUMENT

**I.     Plaintiff's Fourth Amendment Claim (Count I) and Malicious Prosecution Claim (Count III) Are Defeated by Probable Cause.**

### A.     Irrefutable Probable Cause Existed that Plaintiff Murdered Cezaire Murrell.

Count I presents a claim for unlawful pre-trial detention under the Fourth Amendment, and Count III is a malicious prosecution claim under Illinois law. The existence of probable cause, which is evident from the allegations of the Complaint, is fatal to both. *Coleman v. City of Peoria, et al.*, 925 F.3d 336, 350 (7th Cir. 2019).

Probable cause is not a high bar. *Kaley v. U.S.*, 571 U.S. 320, 338 (2014). It "exists where the police officer is aware of facts and circumstances 'sufficient to warrant a prudent man in believing that the petitioner had committed or was committing an offense.'" *Coleman*, 925 F.3d at 350 quoting *Beck v. Ohio*, 379 U.S. 89, 91 (1964). Where a Plaintiff pleads sufficient facts to lead a prudent officer to believe the offense was committed, dismissal pursuant to FED.R.CIV.P. 12(b)(6) is proper. *See*, *Williamson v. Curran*, 714 F.3d 432, 447-448 (7th Cir. 2013) (affirming dismissal of false arrest claim at the pleading stage where adequate facts were pled to establish probable cause); *Neita v. City of Chicago*, No. 19-CV-595, 2019 WL 5682838, at *3 (N.D. Ill. Nov. 1, 2019) ("At the motion to dismiss stage, after accepting the well-pleaded facts as true, the existence of probable cause is a question of law."); *Andersen v. Village of Glenview*, 17-CV-5761, 2018 WL 6192171 at *7 (N.D. Ill. Nov. 28, 2018) quoting *Maxwell v. City of Indianapolis*, 998 F.2d 431, 434 (7th Cir. 1993) ("Courts, not juries, address the defense of probable cause when 'the underlying facts claimed to support probable cause are not in dispute.'"); *Houston v. Village of Calumet Park*, 16-CV-8646, 2019 WL 3386967, at *3 (N.D. Ill. July 26, 2019) ("A

Plaintiff asserting [malicious prosecution] may plead herself out of court by alleging facts that establish the existence of probable cause."); *Lamb v. McMillen,* 16-CV-3004, 2016 WL 4706926, at *6 (C.D. Ill. Sept. 8, 2016) (dismissing malicious prosecution claim where Complaint did not establish a lack of probable cause). Taking the well-pleaded facts as true, Plaintiff has provided ample facts to establish probable cause for his arrest, necessitating dismissal of his Fourth Amendment and malicious prosecution claims.

Plaintiff admits that he shot and killed Cezaire Murrell. (Dkt. 12 at ¶¶ 35-36.) After shooting Murrell, Plaintiff fled the scene and Willie Turner removed the victim's gun from the scene. (Dkt. 12 at ¶¶ 38, 40.) As a result, police arrived and discovered an unarmed victim left for dead with two gunshot wounds. (Dkt. 12 at ¶ 41.) Additionally, three separate eyewitnesses: Darryl Haynes, Gary Hammond, and Marcus Hammond, identified Terrence Haynes to police as the person who shot Murrell. (Dkt. 12 at ¶¶ 42-53.) Undoubtedly even one of these identifications would have been sufficient to support probable cause. *See, Gramenos v. Jewel Companies, Inc.,* 797 F.2d 432, 440 (7th Cir. 1986) ("a single eyewitness's statement can support an indictment[.]"); *Askew v. Chicago*, 440 F.3d 894 (7th Cir. 2006). In sum, the allegations state that Murrell was found by police unarmed with gunshot wounds, Plaintiff was identified by three separate eyewitnesses as the shooter, and Plaintiff fled the scene without explanation. The allegations unequivocally demonstrate probable cause.

Moreover, any argument that probable cause was negated because the three associates and relatives of Plaintiff who identified Plaintiff as the shooter (Gary Hammond, Darryl Haynes and Marcus Hammond) told police that Plaintiff fired in self-defense is a non-starter. To be sure, the subjective opinions of witnesses on whether an affirmative defense would be available does not eviscerate the probable cause established by the totality of the circumstances. Though a

police officer may not ignore "conclusively established" evidence of the existence of an affirmative defense, an officer has no duty to investigate the validity of any defense. *McBride v. Grice,* 576 F.3d 703, 707 (7th Cir. 2009) (Per Curiam); *Hodgkins ex rel. Hodgkins v. Peterson*, 355 F.3d 1048, 1061 (7th Cir. 2004); *Humphrey v. Staszak*, 148 F.3d 719, 724 (7th Cir. 1998) ("There is no legal basis for allowing an affirmative defense, which might have allowed the plaintiff to escape a conviction[,] to interfere with the established § 1983 probable-cause-to-arrest analysis."); *Coleman v. City of Chicago*, 09-CV-6700, 2011 WL 1542129, at \*4 (N.D. Ill. April 22, 2011) (granting summary judgment on false arrest claim for battery and noting that police have no duty to investigate the validity of a claim of self-defense). *See also, District of Columbia v. Wesby,* 138 S.Ct. 577, 588 (2018) ("[P]robable cause does not require officers to rule out a suspect's innocent explanation for suspicious facts."); *Askew*, 440 F.3d at 895 ("Police need not conduct an investigation but may arrest and let prosecutors and courts determine who is telling the truth."). This is especially true in light of the facts that Plaintiff pleads were known to police here.[3]  There was no gun at the scene and Plaintiff immediately fled rather than staying to explain to police what happened. *See, e.g., Wesby,* 138 S.Ct. at 587 (noting as a factor for probable cause for unlawful entry that a reasonable officer could infer that when they busted a party, the partygoer's "scattering and hiding" was indicative that they knew they were not supposed to be there.) It simply cannot be argued that self-defense was conclusively established when Plaintiff's associates' assertions that Murrell was armed were not corroborated by the crime scene, and the shooter chose to flee, which could reasonably be interpreted as a manifestation of guilt. Ample probable cause existed to arrest Plaintiff for murder.

---

[3]  Plaintiff also does not allege that police were aware of the threats he claims Murrell made earlier that day. (Dkt. 12 at ¶¶ 22-24.)

8

Thus, Count I and Count III should be dismissed for failure to state a claim because the Complaint demonstrates conclusively that Plaintiff killed Cezaire Murrell, and ample probable cause that he murdered him.

### B.    Alternatively, Defendants are Entitled to Qualified Immunity For Count I.

At a minimum, Defendant Officers are entitled to qualified immunity on Plaintiff's Fourth Amendment claim. Defendants are entitled to qualified immunity under 42 U.S.C. § 1983 unless they (1) violated a constitutional right and (2) the unlawfulness of their conduct was clearly established at the time. *Wesby*, 138 S.Ct. at 589. Because it is an immunity from suit, the court should decide qualified immunity as early as possible, including on a motion to dismiss. *Pearson v. Callahan,* 555 U.S. 223, 231-32 (2009); *Southerland v. Escapa*, No. 14-CV-3094, 2015 WL 1329969, at \*5 (C.D. Ill. March 20, 2015) (dismissing Fourth Amendment claim at the pleading stage based on the existence of probable cause or at a minimum, qualified immunity). "Clearly established" is a high threshold, requiring that the law be so well-settled that "every reasonable official would interpret it to establish the particular rule that plaintiff seeks to apply." *Wesby,* 138 S.Ct. at 590. The cornerstone of the "clearly established" standard is the requirement that the legal principle prohibited the officer's conduct in the particular circumstances before him. *Id*. at 590. In other words, it requires a "high 'degree of specificity.'" *Id*. at 590 quoting *Mullenix v. Luna*, 136 S.Ct. 305, 309. (2015) (*Per Curiam*). The Supreme Court has stressed that the specificity requirement is particularly important in the Fourth Amendment context because "[p]robable cause turn[s] on the assessment of probabilities in particular factual contexts and cannot be reduced to a neat set of legal rules[.]" *Wesby*, 138 S.Ct. at 590 (internal quotation marks omitted).

9

Here, the Defendant Officers came upon a man who had been shot and killed. The victim did not possess a gun or any other weapon, Plaintiff was identified by three people as the shooter, and he had fled the scene before police arrived. Whether the alleged contentions by Plaintiff's associates that Plaintiff fired in self-defense were true was a matter for the trial process, not for the officers to make in deciding whether probable cause was present. Minimally, the officers are entitled to qualified immunity because they could reasonably but incorrectly conclude probable cause was present notwithstanding the witnesses' alleged assertions that Plaintiff shot and killed Murrell in self-defense. *Wesby*, 138 S.Ct. at 591 citing *Anderson v. Creighton*, 483 U.S. 635, 640-641 (1987). Indeed, "innocent explanations – even uncontradicted ones- do not have any automatic, probable-cause-vitiating effect." *Wesby*, 138 S.Ct. at 592. As such, at a minimum, Defendant Officers are entitled to qualified immunity for reasonably believing probable cause existed.

## II.     Plaintiff Has Not Pled a Violation of His Due Process Right to a Fair Trial Under the Fourteenth Amendment (Count II).

Count III alleges two distinct due process violations. Plaintiff alleges that Defendants both fabricated evidence and withheld exculpatory evidence under *Brady v. Maryland*, 373 U.S. 83 (1963). Both the *Brady* and fabrication claims stem from the same four alleged actions: (1) Defendant Wagner's report regarding her conversation with Marcus Hammond; (2) Defendant Lowman's statement signed by Marcus Hammond; (3) Defendant Lowman's report of his interview of Gary Hammond; and (4) Defendant Miller's report of his interview of Darryl Haynes.[4] As addressed below, each fails to state a claim and is ripe for dismissal.

---

[4] Plaintiff has not pled that any City Defendant had personal involvement in the alleged fabrication or *Brady* violations of any other Defendant. As such, for purposes of examining the Complaint, each Defendant's alleged personal involvement is limited to the interview and reports they are alleged to have conducted. *See, e.g., Stacey v. Peoria Cnty., Ill.*, 13-CV-1051, 2013 WL 3279997 at *5 (C.D. Ill. June 27, 2013) (To state a § 1983 claim against an individual, one must

**Table Summary of Allegations re: Officer Reports**

|  | Officer Lowman | Officer Miller | Officer Wagner | ASA Astrella & ASA Jeneary |
|---|---|---|---|---|
| Marcus Hammond | Lowman wrote statement omitting Marcus's comment that Murrell was armed and reaching for a gun, instead stating Plaintiff racked the gun and fired twice at Murrell, who was not armed. (¶¶ 44-45.) |  | Wagner's report omitted Marcus's observation of Murrell with a firearm and that Plaintiff acted in self-defense. (¶¶ 42-43.) | Within days of shooting, Marcus told ASA Astrella Plaintiff fired in self-defense. Prior to trial, Marcus repeated to Astrella and Jeneary that Murrell had a gun and Plaintiff shot in self-defense. (¶¶ 54-56, 62.) |
| Gary Hammond | Falsely documented Gary as stating he observed Murrell pull the gun out of his waistband after shot when Gary told Lowman that Murrell was reaching under his shirt prior to the shooting and Gary saw the gun in Murrell's hand immediately after shooting. (¶¶ 48-50.) |  |  |  |
| Darryl Haynes |  | Darryl told Miller he saw Murrell with a gun out of his waistband when Plaintiff fired. Miller falsely reported Darryl as stating Plaintiff shot Murrell before he could get his gun out and Plaintiff then took Murrell's gun out of his waistband and ran. (¶¶ 51-52.) |  |  |

allege "the defendant was personally responsible for the wrongful conduct.").

11

### A.      Plaintiff Fails to State a *Brady* Violation.

To state a *Brady* violation, the Complaint must plead facts that a piece of withheld evidence was: (1) favorable to the accused; (2) suppressed by the government; and (3) material. *Brady v. Maryland*, 373 U.S. 83 (1963); *Carvajal v. Dominguez*, 542 F.3d 561, 566-567 (7th Cir. 2008). Plaintiff's *Brady* claims fail because he has not alleged that evidence was suppressed by any of the Defendant Officers. To establish suppression, one must demonstrate: (1) a failure to disclose known evidence in time for a criminal defendant to make use of it; and (2) the evidence was not otherwise available to the defendant through reasonable diligence. *Petty v. City of Chicago*, 754 F.3d 416, 423 (7th Cir. 2014) (citations omitted).

The essence of a *Brady* claim is the "concealment of exculpatory evidence *unknown* to the defendant." *U.S. v. Lee*, 399 F.3d 864, 865 (7th Cir. 2005) (emphasis added). When evidence is known to the defendant or can be accessed by an exercise of reasonable diligence, no *Brady* violation has occurred. *See, e.g., U.S. v. Earnest*, 129 F.3d 906, 910 (7th Cir. 1997). Plaintiff alleges that three witnesses who were with him at the time and location of the shooting (Gary and Marcus Hammond and Darryl Haynes) had exculpatory information which would have bolstered his self-defense theory. Specifically, he alleges Defendant Lowman falsely reported that Gary Hammond told him he saw Murrell pull the gun from his waistband after being shot rather than reaching under his shirt before the shooting as Gary stated. (Dkt. 12 at ¶¶ 48-49.) Similarly, Plaintiff alleges that Defendant Miller falsely reported that Darryl Haynes told him Plaintiff retrieved Murrell's gun from Murrell's waistband after shooting him, when Darryl actually said Murrell already had the gun out of his waistband before Plaintiff shot him. (*Id.* at ¶¶ 51-52.) Lastly, Plaintiff alleges Defendants Lowman and Wagner altogether failed to document Marcus Hammond's statements to them that Murrell had a gun and Plaintiff fired in self-defense. (*Id.* at ¶¶ 42-45.)

12

None of these alleged reporting deficiencies violated *Brady* because it was all known to Plaintiff at the time of the shooting. Obviously, Plaintiff was at the scene with these witnesses and he alleges affirmatively that he saw Murrell reaching for the gun when lunging at Plaintiff at the time Plaintiff shot him. (Dkt. 12 at ¶ 34.) And Plaintiff specifically alleges it was Turner, not Plaintiff, who took Murrell's gun after the shooting. (*Id.* at ¶ 38.) Armed with his first-hand knowledge of what transpired at the scene, and more specifically all who were present, it was incumbent on Plaintiff to investigate why his associates were documented as presenting stories inconsistent with what he alleges he knew to be true about the shooting. *See, e.g., Harris v. Kuba,* 486 F.3d 1010, 1015 (7th Cir. 2007) ("Harris's own alibi was not concealed from him and is therefore not properly a claim under *Brady*."); *Carvajal,* 542 F.3d at 567 ("It is [the criminal defendant's] responsibility to probe the witnesses and investigate their versions of the relevant events."). Plaintiff and his counsel's failure to act with diligence does not amount to a *Brady* violation.

Moreover, Plaintiff's Complaint is riddled with allegations that prior to Plaintiff's criminal trial, Marcus Hammond also told the assistant state's attorneys prosecuting Plaintiff, Defendants Jeneary and Astrella, that Murrell had a gun and Plaintiff fired in self-defense. (Dkt. 12 at ¶¶ 54-57, 62, 73-75, 109.) These allegations defeat the *Brady* claim against the City Defendants, whose obligation is to provide exculpatory evidence to the prosecution. *See, e.g., Kyles v. Whitley,* 514 U.S. 419, 437 (1995) ("the individual prosecutor has a duty to learn of any favorable evidence known to the others acting on the government's behalf in the case, including the police."); *Coleman*, 925 F.3d at 349 ("Police officers must provide exculpatory and/or impeachment evidence to prosecuting attorneys – a corollary to the prosecutor's obligation to disclose such evidence to defense counsel under *Brady*[.]"); *Goudy v. Cummings*, 922 F.3d 834,

837 (7th Cir. 2019) ("Police officers generally discharge their *Brady* obligations by turning over such evidence the prosecutors, who in turn have a duty to disclose the evidence to the defense.") Once the prosecution had the allegedly exculpatory evidence, here being Marcus's assertions that Murrell was armed and Plaintiff shot in self-defense, the Defendant Officers' obligations were discharged and the prosecutor's duty to disclose the evidence to Plaintiff's criminal defense counsel was triggered.

Additionally, with regard to Officer Lowman's interview of Gary Hammond and Miller's interview of Darryl Haynes, the *Brady* claim also fails because Plaintiff concedes that this information was available through reasonable diligence. Indeed, in his allegations against Defendant Boyd, Plaintiff asserts both witnesses would have supported the self-defense theory if Boyd would have simply interviewed them and/or called them at trial. (Dkt. 12 at ¶¶ 66-71, 128-131.) In fact, Plaintiff alleges it was Defendant Boyd's failure to interview or call Gary Hammond and Darryl Haynes that was the "proximate cause" of his conviction. (*Id*.) Plaintiff cannot possibly reconcile these allegations against Defendant Boyd while simultaneously asserting that the information known by Darryl Haynes and Gary Hammond was not available by reasonable diligence.

Accordingly, Plaintiff has not pointed to any evidence which was unknown to him, suppressed by Defendant Officers and unavailable by reasonable diligence. The *Brady* claim must be dismissed.

**B.      Plaintiff Fails to State a Fabrication of Evidence Claim.**

To begin, a fabrication claim necessarily requires a showing that the defendant created evidence that he or she knew to be false. *Coleman*, 925 F.3d at 344-345. With regard to Defendant Wagner's report, Plaintiff only claims that Wagner omitted Marcus Hammond's

statement that Murrell had a gun and fired in self-defense. (Dkt. 12 at ¶¶ 42-43.) Plaintiff does

not allege that Defendant Wagner made any false statements in her report, which defeats the

fabrication claim. (Dkt. 12 at ¶ 43.) Plaintiff cannot recast the allegations of his *Brady* claim

against Defendant Wagner as one for fabrication of evidence. As detailed below, the remainder

of the fabrication claims (as well as that which relates to Wagner's report) fail because Plaintiff

has not pled the evidence was used to deprive him of a fair trial.

To state a claim, the alleged fabricated evidence must have "involved not merely the

fabrication, but the introduction of the fabricated evidence at the criminal defendant's trial"

because "if the evidence hadn't been used against the defendant, he would not have been harmed

by it, and without a harm there is, [ ] no tort." *Fields v. Wharrie*, 740 F.3d 1107, 1114 (7th Cir.

2014); *see also Whitlock v. Brueggemann*, 682 F.3d 567, 582 (7th Cir. 2012) ("[I]f an officer []

fabricates evidence and puts that fabricated evidence in a drawer, making no further use of it,

then the officer has not violated due process[.]"). Simply put, Plaintiff has to plead facts showing

that the fabricated evidence was "later used to deprive the [criminal] defendant of [his] liberty in

some way." *Whitlock*, 682 F.3d at 580. Recently, in *Lewis v. City of Chicago,* the Seventh Circuit

clarified that the requisite liberty deprivation must be related to Plaintiff's trial because any claim

relating to pretrial detention is properly brought as a Fourth Amendment claim. 914 F.3d 472,

478-480 (7th Cir. 2019). Thus, the absence of any factual allegations demonstrating how the

reports deprived Plaintiff of a fair trial dooms his fabrication claim at the pleading stage.

Plaintiff alleges Defendants Miller and Lowman fabricated police reports by incorrectly

documenting what Gary Hammond and Darryl Haynes said they saw with regard to the shooting.

(Dkt. 12 at ¶¶ 48-52.) There is no allegation that these reports were introduced at trial and

according to the Complaint, neither Gary Hammond nor Darryl Haynes testified at trial. (Dkt. 12

15

at ¶¶ 70, 76). Additionally, as with Officers Lowman's and Miller's reports pertaining to witnesses Gary Hammond and Darryl Haynes, Plaintiff has not pled any facts indicating that Defendant Wagner's report of her conversation with Marcus Hammond was introduced at trial or otherwise used to interfere with his right to a fair trial. As such, the fabrication claim fails with regard to these three police reports. *See, e.g.*, *Fields*, 740 F.3d at 1114; *Whitlock*, 682 F.3d at 582; *People v. Nix*, 479 N.E.2d 1147, 1152 (Ill. App. 3d Dist. 1985) ("It is well accepted that police reports are inadmissible hearsay."); *Cole v. Meeks*, *et al.*, No. 15-CV-1292, Dkt. No. 38, p. 14 (C.D. Ill. Apr. 21, 2016) (Mihm, M.) (granting motion to dismiss due process claim for fabrication where the plaintiff did not allege the fabricated report was introduced or admitted at trial); *Cole v Meeks, et al*., No. 15-CV-1292, 2019 WL 1002500, at *3-4 (C.D. Ill. March 1, 2019) (Mihm, M.) (affirming dismissal of fabrication claim based on police report on motion to reconsider); *Heidelberg v. Manias, et al.,* 18-CV-1161, 2019 WL 4862069, *17 (C.D. Ill. March 26, 2019) ("Plaintiff's allegations are too general and conclusory to make it plausible that the police report that [defendant] allegedly fabricated contributed to Heidelberg's loss of liberty.").

With regard to Defendant Lowman's written statement summarizing his interview with Marcus Hammond, Plaintiff has alleged that Officer Lowman "included a statement that Plaintiff had racked the gun and then fired twice at Murrell, *who was not armed*." (Dkt. 12 at ¶ 45.) (emphasis added). While Plaintiff does not allege the written statement was introduced at trial, he does allege that Marcus later "falsely testified that Murrell was unarmed at the time of the shooting[,]" which, if true, would support Plaintiff's contention that this testimony was fabricated by Defendant Lowman because it was initially included in the written statement he drafted for Marcus Hammond. (Dkt. 12 at ¶ 73.) However, Defendant Lowman never documented this. Even at the pleading stage, a court may properly consider "documents that are

central to the complaint and are referred to in it" without converting the motion to one for summary judgment. *Williamson*, 714 F.3d at 436; *188 LLC v. Trinity Industries, Inc.,* 300 F.3d 730, 735 (7th Cir. 2002) ("The purpose of the exception is to prevent parties from surviving a motion to dismiss by artful pleading or by failing to attach relevant documents."). There can be no question that the statement Lowman drafted for Marcus's signature is central to the Complaint, as it forms the basis of one of Plaintiff's fabrication of evidence claims. As such, Defendants are providing this Court with Defendant Lowman's statement because its content has been misrepresented in the Complaint. Contrary to the Complaint's allegation, Lowman did not affirmatively state that Murrell was not armed. Marcus's statement is simply silent on the issue. (*See*, Exhibit A.) As discussed above, *Brady* carries threshold burdens for Plaintiff that he cannot overcome, including a showing of suppression and unavailability by reasonable diligence. (*See, Supra*, Sec. II(a).) But Plaintiff's efforts to circumvent the fatal deficiencies of his *Brady* claim by recasting it as one for fabrication are wholly unsupported by the law, and Plaintiff should not be permitted to survive a motion to dismiss by mispresenting the content of the one page statement which forms the basis of the fabrication claim. Defendant Lowman never documented Marcus as stating Murrell was not armed. Irony aside, Plaintiff should not be permitted to fabricate a fabrication claim. There is not a shred of factual support for any claim that the statement Defendant Lowman drafted interfered with Plaintiff's right to a fair trial.

Thus, Plaintiff has not pled a due process claim based on the fabrication of evidence, and this part of Count II must be dismissed in its entirety.

III.   **Plaintiff's State Law Claim of Intentional Infliction of Emotional Distress (IIED) Fails to State a Claim (Count IV).**

A.   **Count IV is Time-Barred.**

In Illinois, an IIED claim "in the course of arrest and prosecution accrues on the date of the arrest." *Bridewell v. Eberle*, 730 F.3d 672, 678 (7th Cir. 2013); *Cole v. Meeks, et al.*, No. 15-CV-1292, Dkt. No. 38, p. 14 (C.D. Ill. Apr. 21, 2016) (Mihm, M.).[5] Courts have interpreted *Bridewell* as embodying the general rule for the limitations period for IIED claims, even when intertwined with malicious prosecution claims. *Grayson v. City of Aurora*, No. 13-CV-1705, 2016 WL 199058 at *16 (N.D. Ill. Jan. 17, 2016). As such, Plaintiff's IIED claim accrued when he was arrested. Though Plaintiff does not plead the date of his arrest, it clearly would have been some time prior to his August 16, 2000 conviction, making the claim untimely by nearly two decades. *See*, Dkt. 12, ¶ 77; 745 ILCS 10/8–101.

B.   **Count IV Otherwise Fails to State a Claim.**

In order to plead a claim for intentional infliction of emotional distress under Illinois law, Plaintiff must plead that Defendants engaged in "truly extreme and outrageous" behavior. *See, e.g., Powers v. Jumper*, 17-CV-4277, 2018 WL 8803956, at *1 (C.D. Ill. June 26, 2018) quoting *Pavlik v. Kornhaber*, 326 Ill.App.3d 731, 744 (1st Dist. 2001). Plaintiff's claim for intentional infliction of emotional distress against the City Defendants is based on the allegation that he was subjected to criminal charges for which there was no probable cause. (Dkt. 12 at ¶ 121.) As addressed above in Sec. I, irrefutable probable cause existed, defeating the intentional infliction

---

[5] Any assertion that Defendants failed to remedy their alleged misconduct during Plaintiff's post-conviction incarceration would be unavailing. *Bridewell*, 730 F.3d at 678 ("The idea that failing to reverse the ongoing effects of a tort restarts the period of limitations has no support in Illinois law—or in federal law either.").

of emotional distress claim. As Plaintiff has not even pled that he was subjected to criminal charges for which there was no probable cause, he certainly has not pled "extreme and outrageous" conduct. *See, Cooney v. Casady*, 746 F.Supp.2d 973, 977 (N.D. Ill. Oct. 28, 2010) ("Without any evidence of misconduct on defendants' part, I easily conclude that plaintiff's intentional infliction of emotional distress claim, which is based on the same conduct underlying her § 1983 claim, fails."). Plaintiff fails to state a claim.

## IV.    Indemnification (Count VI).

Absent an actionable underlying claim against the individual defendants, the City of Kankakee cannot be held vicariously liable. Accordingly, Plaintiff's indemnification claim should be dismissed. *See* 745 ILCS 10/2–109; 745 ILCS 10/9–102.

## CONCLUSION

For the foregoing reasons, Defendants respectfully request this Court dismiss all claims against the City Defendants (Counts I, II, III, IV, and VI) with prejudice for failure to state a claim, and to enter such other relief as this Court deems equitable and just.

Date: January 14, 2020

Respectfully submitted,

/s/ Laura M. Ranum
LAURA M. RANUM, Attorney No. 6300636
*One of the Attorneys for Defendants City of Kankakee and Defendant Officers Kenneth Lowman, Samuel Miller and Susan Wagner*

James G. Sotos
Jeffrey R. Kivetz
Laura M. Ranum
THE SOTOS LAW FIRM, P.C.
141 W. Jackson Blvd, #1240A
Chicago, IL 60604
(630) 735-3300
lranum@jsotoslaw.com

19

## <u>CERTIFICATE OF SERVICE</u>

I certify under penalty of perjury pursuant to 28 U.S.C.A. § 1746 that the foregoing is true and correct, that on **Tuesday, January 14, 2020**, I electronically filed the foregoing **City Defendants' Memorandum Of Law In Support Of Their Rule 12(B)(6) Motion To Dismiss The Complaint** with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the attorneys of record on the below Service List.

***<u>Attorneys for Plaintiff:</u>***
Andrew M. Hale
Shawn W. Barnett
Hale & Monico, LLC
53 W. Jackson Blvd.
Suite 330
Chicago, IL 60604
T: (312) 341-9646
F: (312) 341-9656
ahale@ahalelaw.com
sbarnett@ahalelaw.com

***<u>Attorneys for Kankakee County Public Defender's Office:</u>***
Elizabeth A. Knight
Joseph W. Smith
Michael J. Atkus
Knight, Hoppe, Kurnik, & Knight, Ltd.
233 E. 84th Drive, Suite 301
Merrillville, IN 46410
T: (219) 322-0830
F: (219) 322-0834
eknight@khkklaw.com
jsmith@khkklaw.com
matkus@khkklaw.com

Michael J. Atkus
Knight, Hoppe, Kurnik, & Knight, Ltd.
5600 North River Road, Suite 600
Rosemont, IL 60018
T: (847) 261-0700
F: (847) 261-0714
matkus@khkklaw.com

***<u>Attorneys for Kankakee County State's Attorney's Office:</u>***
Michael W. Condon
Jason W. Rose
G. David Mathues
Hervas, Condon & Bersani, P.C.
333 Pierce Road, Suite 195
Itasca, IL 60143-3156
T: (630) 773-4774
F: (630) 773-4851
mcondon@hcbattorneys.com
jrose@hcbattorneys.com
dmathues@hcbattorneys.com

/s/ Laura M. Ranum
LAURA M. RANUM, Atty No. 6300636
*One of the Attorneys for Defendants City of Kankakee and Defendant Officers Kenneth Lowman, Samuel Miller and Susan Wagner*