IN THE UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
URBANA DIVISION

| | | |
|---|---|---|
| TERRENCE HAYNES, | ) | |
| | ) | Case No. 19-CV-2296 |
| Plaintiff, | ) | |
| | ) | Judge Colin Stirling Bruce |
| v. | ) | Magistrate Judge Eric. I. Long |
| | ) | |
| FRANK ASTRELLA, et al., | ) | |
| | ) | |
| Defendants. | ) | JURY TRIAL DEMANDED |

**DEFENDANTS' REPLY MEMORANDUM IN
SUPPORT OF MOTION FOR SANCTIONS**

Defendants City of Kankakee, City of Kankakee Police Officers Kenneth Lowman, Samuel Miller and Susan Wagner, Kankakee County, and former Kankakee County Assistant State's Attorneys ("ASA") Frank Astrella and Michael Jeneary, by their attorneys, The Sotos Law Firm, P.C., reply in support of Defendants' Amended Motion for Sanctions, and state:

**INTRODUCTION**

Defendants' motion for sanctions demonstrated, through recorded Illinois Department of Corrections ("IDOC") telephone calls, that Plaintiff and others schemed in 2015 to extract false testimony from key witness Marcus Hammond ("Marcus") in order to fabricate a basis for this lawsuit, culminating in Jemiko Bates's ("Miko") purchase of Marcus's affidavit for $1,000. Marcus stated in that affidavit, for the first time since Plaintiff shot and killed Murrell on May 27, 1999, that he told police that same night, and prosecutor Defendant Frank Astrella "within the next day or so," that Murrell was armed and lunging at Plaintiff when Plaintiff shot him. (Dkt. 76-28, Ex. 21 at ¶¶ 9-10, Marcus's 2015 Aff.) The reference to "a day or so" was included to circumvent the doctrine of prosecutor immunity and ignored the fact that Astrella was uninvolved in the case until months later, after Plaintiff's arrest. The IDOC calls further revealed

that Plaintiff's then counsel told Miko what testimony he needed from Marcus for the civil case and was later advised that Marcus wanted money for his affidavit yet failed to take steps to prevent a payment from occurring. Defendants set forth case law showing the only proper remedy for that brazen affront to the integrity of the judicial process is dismissal.

Notably, Plaintiff does not dispute that dismissal is the only appropriate remedy if the Court finds a bribe occurred. Instead, he (1) challenges the Court's authority to address the issue because he claims (incorrectly) that Marcus's affidavit was not used in this case; (2) contends (again incorrectly) that the Court cannot consider the IDOC calls because they are inadmissible; and (3) claims (preposterously) that the Court must conclude the bribe never occurred because the alleged schemers have sworn that what appeared to be a bribe was a big misunderstanding. As demonstrated below, the Court's jurisdiction over the matter is secure, the recorded IDOC calls have ample "indicia of reliability" to warrant the Court's consideration, and Plaintiff's new affidavits that attempt to explain away the evidence of bribery, require limited discovery to investigate the explanation, after which the Court should hold an evidentiary hearing.[1]

## LEGAL ARGUMENT

**I.      Plaintiff's Effort To Avoid The Merits By Questioning The Court's Authority To Address The Evidence Of Bribery Is Fundamentally Misguided.**

Defendants have explained that the Court's authority to address the bribe under FED.R.CIV.P. 37 and the Court's inherent authority stemmed from two independent sources: (1) Plaintiff's use of Marcus's affidavit in this case by first producing it in discovery and then referring defense counsel to it in response to interrogatories and (2) compelling evidence that the

---

[1] Defendants' burden of proof at an evidentiary hearing to determine whether to impose sanctions is a preponderance of the evidence. *Ramirez v. T&H Lemont*, 845 F.3d 772, 781 (7th Cir. 2016).

affidavit was specifically tailored when it was signed in 2015 to fabricate a basis for this case. (Dkt. 76 at 10-15, 19, Amended Memorandum in Support of Defendants' Motion for Sanctions ("Defs' Memo").) Evidence of the latter included (a) attorney Schneur Nathan taking Plaintiff's criminal case in return for a 40% contingency fee on this civil case that he valued at 16 million dollars; (b) Nathan telling Miko "it'd be better" if Marcus testified "the police" told him to lie and that he intended to use the evidence in both the criminal and civil cases by "killing all his birds in one stone" [2]; (c) Plaintiff and Miko discussing the need for Marcus's affidavit to state that both prosecutors, Astrella and Jeneary, told him to lie; (d) Marcus signing an affidavit containing first-time descriptions of misconduct by "several" police officers; (e) Marcus signing an affidavit stating that Astrella told him to lie within "a day or so" of the shooting; (f) Marcus being paid in advance for that affidavit; and (g) Plaintiff telling Miko that he would "take care of" the witnesses (Miko, Marcus and Gary) from the proceeds of this civil suit. (*Id*. at 9-15.)

Plaintiff simply ignored that evidence in boldly proclaiming that "Rule 37 does not apply, since the conduct defendants allege did not occur in discovery in this suit." (Dkt. 80 at 2, Plaintiff's Memorandum in Opposition to Defendants' Motion for Sanctions ("Resp.").) He also ignored legal authority which provides that his use of the affidavit in discovery triggered the Court's authority to assess sanctions under Rule 37. *See, e.g., Wright v. Bogs Mgt.*, 2000 WL 1774086, *6 n.5 (N.D. Ill Dec. 1, 2000) (Pallmeyer, J.) (finding sanctions appropriate under Rule 37 for false or misleading interrogatory answers); *Magnus Electronics, Inc.*, 1986 WL 10061, *11 n. 38 (N.D. Ill. Sept. 5, 1986) (stating "[i]ncomplete or false answers to written interrogatories justify an order under Rule 37 imposing sanctions"). Accordingly, Plaintiff's contention that the Court lacks authority to impose sanctions under Rule 37 is a non-starter.

---

[2] These quotations reflect Miko's representations of attorney Nathan's statements.

Plaintiff's use of Marcus's affidavit in discovery also eviscerates his contention that the Court cannot invoke its inherent authority. (*See,* Resp. at 2-4.) But even if Plaintiff had not used the affidavit in discovery, his contention that *Zapata Hermanos Sucesores, S.A. v. Hearthside Baking Co.*, 313 F.3d 385, 391 (7th Cir. 2002) and *Grochocinski v. Mayer Brown*, 452 B.R. 676 (N.D. Ill 2011), *aff'd,* 719 F.3d 785 (7th Cir. 2013) prevent the Court from invoking inherent authority to address misconduct that occurred "in the events giving rise to the litigation" grossly misstates the principles espoused in both cases. (Resp. at 2.) Indeed, Plaintiff somehow overlooked the fact that *Grochocinski* found that a party **could** and **would** be sanctioned under the court's inherent authority to address pre-litigation conduct occurring in the plaintiff's "investigation into [defendant's] actions and the decision to file suit." *Id*. at 683. Moreover, *Grochocinski's* finding that two other parties could not be sanctioned was based on the fact that the culpable conduct was "the underlying conduct that sparked the litigation, **not** the parties' investigation into the claims and the decision to file suit." *Id.* (emphasis added). For that same reason, *Zapata* held that a court could not invoke inherent authority to circumvent the "American Rule," which makes litigants responsible for their own attorney's fees, simply by concluding that a defendant's failure to pay invoices (the underlying conduct that sparked the lawsuit) was unjustified. *Zapata*, 313 F.3d. at 391; *Accord*, *Mach v. Will County Sheriff*, 580 F.3d 495, 501 (7th Cir. 2009) (explaining that "bad faith may occur beyond the filing of the case and may be found **not only in the actions that led to the lawsuit**, but also in the conduct of the litigation") (emphasis added) (internal quotations removed); *See, e.g.*, *ValuePart, Inc. v. Clemens*, No. 06-2709, 2006 WL 8460312, at *4 (N.D. Ill. Oct. 30, 2006) (the court has the inherent authority to sanction a party for misconduct, including prelitigation spoliation, in order to protect the integrity of the judicial system and prevent abuses of the judicial process).

4

Here, the culpable conduct concerns Plaintiff's fabrication of the factual basis for this lawsuit through a bribe and the use of the fruits of that bribe in the litigation of this matter. Plaintiff's contention that the Court cannot address that conduct under both Rule 37 and the Court's inherent authority should be disregarded.[3]

## II. Plaintiff's Unsupported Effort To Avoid The Merits By Contending Certain IDOC Calls Are "Inadmissible" Fundamentally Misunderstands The Nature Of This Proceeding.

### A. Sanctions Proceedings Are Analytically Distinct From Summary Judgment.

Defendants provided the Court with the actual audio recordings of nine (9) IDOC calls which plainly demonstrate a scheme to extract false testimony from Marcus and the payment of a $1,000 bribe for his 2015 affidavit. In another attempt to avoid the merits, Plaintiff simply announces, without citing a single relevant authority[4], that Defendants' request for dismissal equated their motion with a motion for summary judgment that must be supported by evidence that is admissible at trial. (Resp. at 4-5.)

Initially, by failing to cite any authority to support his analogy, and thereby apply the full force of the rules of evidence governing summary judgment, Plaintiff has waived the argument. *See, e.g.*, *Pacheco v. Will Cty. Sheriff's Office*, 2010 WL 3155983 at *7 (N.D. Ill. Aug. 9, 2010) (concluding that plaintiff's "perfunctory and undeveloped argument- that fails to cite any legal authority- constitutes waiver of her" claim). Second, the only case Defendants located that

---

[3] Ordinarily, the courts should invoke inherent authority when misconduct is outside the reach of the rules. *Chambers v. Nasco, Inc.*, 501 U.S. 32, 50 (1991).

[4] Plaintiff referenced *Sanfield, Inc., v. J.C. Penney, Inc.,* 1994 WL 376275, *2 n.3 (N.D. Ill. 1994) and *Carlisle v. Deere & Co.,* 576 F.3d 649, 655 (7th Cir. 2009) for the type of evidence that can be considered on summary judgment (Resp. at 4-5) but *Carlisle* did not even mention sanctions and the footnote Plaintiff cites from *Sanfield* never addressed what kind of evidence is admissible on sanctions motions.

addressed his novel argument expressly rejected the contention. *See, Rezende v. Citigroup Global Markets, Inc.*, 2011 WL 1584607, *27 (S.D. N.Y. March 11, 2011) ("This Court does not accept [plaintiff's] argument that a sanctions motion- even a case-dispositive one- should be viewed as equivalent to a summary judgment motion, as the purposes of summary judgment and sanctions motions, and their governing standards, are analytically distinct") (recommendation adopted in part and rejected in part on other grounds in *Rezende v. Citigroup Glob. Markets, Inc.,* 2011 WL 1584603 (S.D.N.Y. Apr. 27, 2011)).

> **B.  The Filing Of A Sanctions Motion Does Not Depend On Submission Of Formally Admissible Evidence.**

Contrary to Plaintiff's position, the courts do not require that a sanctions motion, even at the evidentiary hearing stage, be based on admissible evidence, so long as the evidence has "indicia of reliability" deserving of the courts' consideration. *Sentis Group, Inc., v. Shell Oil Co.,* 559 F.3d 888, 901 (8th Cir. 2009) (holding that "[w]hile the Federal Rules of Evidence do not necessarily apply in the context of a motion for sanctions, evidence relied upon must, at a minimum, bear indicia of reliability," especially when dismissal is sought). Here, Plaintiff does not contend, nor could he contend, that the audio recordings of his conversations on recorded IDOC lines do not accurately reflect the statements attributed to him and his various family members. As a result, the calls plainly bear the requisite "indicia of reliability" warranting the Court's consideration in determining whether to impose sanctions, or minimally, to convene an evidentiary hearing. *See, Cook v. Am. Steamship Co.,* 134 F.3d 771, 775 (6th Cir. 1998) (explaining that district courts retain discretion to determine whether to hold evidentiary hearings in advance of imposing sanctions).

Further, even if the Court were to require strict adherence to the rules of evidence at an evidentiary hearing, this matter has not yet progressed to that point. That reality eviscerates

Plaintiff's repeated efforts to turn this proceeding into a game of "gotcha" through his unsupported insistence that Defendants needed to depose the participants in this scheme before bringing it to the Court's attention. (Resp. at 5, stating "[n]othing stopped defendants from obtaining admissible evidence by deposing them"); (Resp. at 7, stating "[t]hey could have avoided the hearsay and Rule 403 problems by deposing Jemiko and Mr. Nathan".) Indeed, no case has remotely suggested that a court can only consider formally admissible evidence in deciding whether a matter is serious enough to warrant an evidentiary hearing at which the Court can apply whatever evidentiary requirements it deems appropriate.[5]

### C. The Statements Plaintiff Challenges Are, In Any Event, Admissible.

Plaintiff's "assumption" that certain IDOC calls are inadmissible is incorrect. Initially, he acknowledges that all statements he uttered on the nine (9) calls are non-hearsay. (Resp. at 6.) Nonetheless, he argues that his statement to his mother and sister acknowledging the $1,000 payment to Marcus should be excluded as unduly prejudicial under FED.R.EVID. 403 because it was not based on first-hand knowledge, but only upon the statement of his brother (who made the payment). (Resp. at 6.)

Plaintiff is correct that the statement is damning, but his contention that it is inadmissible because it is not based on "personal knowledge" stalls at the starting gate. The "definitional exemption for individual admissions is extraordinarily broad" and "they are not subject to the personal-knowledge requirement of FRE 602." *Jordan v. Binns*, 712 F.3d 1123, 1128 (7th Cir. 2013). This is because there is "less concern about trustworthiness, especially in civil cases,

---

[5] Defendants would have needed leave of Court to take the depositions. On March 13, 2020, the parties filed a joint "Report of Rule 26 (f) Planning Meeting" agreeing that "[o]ral discovery should be postponed until the resolution of the pending motions to dismiss." (Dkt. 61 at ¶4.)

because the party against whom the statements are offered can take the stand and explain, deny, or rebut the statements." *Id.*

Here, Miko's description of the bribe to Plaintiff was particularly trustworthy which distinguishes his effort to rely solely on *Mister v. Northeast Illinois Commuter Railroad Corp.*, 571 F.3d 696 (7th Cir. 2009). (Resp. at 6.) In *Mister*, an agent's report that a prior accident had happened at the precise location of a litigated slip and fall injury was excluded as "inherently unreliable" even though it was an admission. *Id.* at 698. This was because the person who wrote the report acknowledged he had no basis to believe it was accurate nor did discovery reveal any such basis. *Id.* at 698-99. Even so, the Seventh Circuit explained that, while exclusion was not an abuse of discretion, the trial court also could have admitted the report as an admission and allowed it to be exposed as unreliable on cross. *Id.* at 699. Here, by contrast, Miko's statement to Plaintiff about the bribe was undeniably reliable as it was Miko who paid the bribe and told its beneficiary (Plaintiff) about it. Indeed, Miko has since submitted an affidavit confirming he believed he paid Marcus (through his older brother Gary) and then told Plaintiff he did so. (Dkt. 80-4 at ¶¶ 9-10, Miko Aff.) Plaintiff's contention that *Mister* supports exclusion of that utterance is non-sensical.

Plaintiff also seeks to exclude as hearsay, Miko's statements to Plaintiff describing the bribe and attorney Nathan's reaction to being told about Marcus's demand for payment. (Resp. at 5.) Initially, both of Miko's statements are admissible under the co-conspirator exception set forth in FED.R.EVID. 801 (d)(2)(E) because Defendants have submitted ample evidence that Plaintiff, Miko, Marcus, Gary and/or Nathan, schemed to fabricate a false factual basis for this suit which included the creation of the 2015 affidavit, false witness testimony, a payment of $1,000 for the affidavit, and now, the creation of additional false affidavits to cover-up the

8

scheme.[6] *See, Smith v. Bray*, 681 F.3d 888, 904 (7th Cir. 2012) (explaining that co-conspirator exception requires proof that a party and a declarant were members of a conspiracy and the disputed statement was made "during and in furtherance of the conspiracy".); *U.S. v. Coe*, 718 F.2d 830, 835 (7th Cir. 1983) (explaining that conspiracy hearsay exception is broader than just crimes and is often described as a "joint venture" or "concert of action" exception).

Alternatively, Miko's statement about the bribe is not hearsay because it will be offered to provide context for Plaintiff's offer to contribute to the bribe and his instructions that Marcus should include in the affidavit the information that attorney Nathan wanted. *See, e.g., U.S. v. Tolliver*, 454 F.3d 660, 665-666 (7th Cir. 2006) (informant's recorded statements with Defendant were non-hearsay because they were offered to put defendants' admissible statements in context).

Further, FED.R.EVID. 807's residual exception supports admission of Miko's statements to Plaintiff revealing the bribe and Nathan's role, because they are highly probative, and both Miko and Plaintiff knew the conversations were recorded. Circumstantial guarantees of trustworthiness provided by the form (actual audio recordings) in which the utterances were

---

[6] Plaintiff's feigned indignation at the "insinuation" that Nathan condoned bribery is not well-taken. (Resp. at 5.) Plaintiff's own submissions confirm Miko told Nathan about Marcus's demand for payment before testifying, and Nathan responded that while Marcus could not be paid to testify, it was "another thing" if his "family" wanted to help. (Dkt. 80-4 at ¶ 8, Miko Aff.) Miko then made the payment and neither it nor Marcus's demands were ever disclosed. Defendants did not exaggerate the import of that evidence in their motion or in this reply. Nathan has now testified he does not recall the conversation but "would have" responded that a witness could not be paid for testimony. (Dkt. 80-2 at ¶ 8, Nathan Aff.) Speaking with defense counsel the day the sanctions motion was filed, Nathan denied some of Miko's representations and Defendants agreed to amend their motion to reflect his denials. (Dkt. 75, Motion to Amend; Defs' Memo at p. 15 n.11 and p. 22 n. 19.) To suggest Defendants should have simply buried the evidence is myopic and short-sighted. Defense counsel was not looking for evidence to implicate a colleague in malfeasance and takes no pleasure in advancing the evidence. That said, suppressing the evidence would have violated counsels' obligations to their clients, to the Court, and to the bar.

submitted further support their admission. *See, e.g., United States v. Moore*, 824 F.3d 620, 623-624 (7th Cir. 2016).

Next, Plaintiff's evidentiary objections to Miko's statements were waived by Plaintiff's submission of Miko's affidavit describing the very same conversations which are captured on the IDOC calls. (Dkt. 80-4 at ¶¶ 3-10, Miko Aff.) Specifically, as set forth on those calls, Miko's affidavit confirms that in trying to help Plaintiff "in any way I could" and knowing Nathan wanted "more detail" from Marcus, Miko (1) put Nathan in touch with Marcus; (2) learned from Gary that Marcus would not sign an affidavit unless he received $1,000; (3) reported Marcus's need for money to Nathan who stated we cannot pay for his testimony but "if Marcus's family wanted to help him that was one thing;" (4) gave Gary $1,000 for Marcus; and (5) then told Plaintiff about the payment, at which point Plaintiff offered to contribute.[7] (*Id.*)

Lastly, Plaintiff's objection to the lack of a Rule 901 authentication for the IDOC calls (Resp. at 5) can be easily cured at an evidentiary hearing by IDOC personnel, should Plaintiff continue to so insist. *See, Shores v. The Dupps Co.*, 2020 WL 6302362, *8 (C.D. Ill. Sept. 14, 2020) (Hawley, M.J.), citing *U.S. ex rel. Youn v. Sklar*, 273 F.Supp. 3d 889, 899 (N.D. Ill. 2017) (explaining that even on summary judgment a party need not authenticate evidence so "long as the exhibits are capable of being presented in an admissible form at trial, such as by having a competent witness testify to lay a foundation for the document.").

---

[7] Even if Miko's statements were substantively inadmissible, they can be used for impeachment given Plaintiff's submission of Miko's affidavit confirming his discussions with Plaintiff about what looks and sounds like a bribe and concerted efforts to shape and secure Marcus's testimony. *See, e.g.*, *Anderson v. City of Rockford*, 932 F.3d 494, 509 (7th Cir. 2019) (explaining that evidence of IDOC calls used to impeach was non-hearsay).

10

Against that backdrop, Plaintiff's contention that the Court cannot consider the IDOC calls in determining whether sanctions should be assessed and/or a hearing convened is unsupportable given their clear indicia of reliability. His effort to prevent the Court's consideration of the merits of the evidence of Plaintiff's scheme and the ensuing bribe should be disregarded.

### III. Plaintiff's Fanciful Attempt To Minimize The Significance Of The 2015 Affidavit And His Own Involvement In The Scheme Lack Merit.

Evidentiary objections aside, Plaintiff cannot plausibly dispute that his IDOC phone calls appear to describe a scheme to fabricate a civil suit against Defendants through the crafting of false testimony, and the payment of $1,000 to the key witness for that testimony. Instead, Plaintiff proclaims, without analysis or addressing the dramatic differences, that Marcus's 2009 and 2015 affidavits are not "dramatically different." (Resp. at 11.) Specifically, he simply ignores the fact that Marcus first claimed 20 years after Plaintiff killed Murrell that (1) he told "several" police officers on the day of the killing that Murrell was armed and lunging at Plaintiff when he was shot, and (2) he said the same thing to ASA Astrella within "a day or so" after of the shooting. (Dkt. 76-28, Ex. 21 at ¶¶ 9-10, Marcus's 2015 Aff.)

Nor does Plaintiff address Defendants' argument that those first-time statements are the primary basis for his civil claims against those Defendants, or that the 2009 affidavit would not have supported a claim against any of those Defendants.[8] When considered in conjunction with the substantial evidence that Plaintiff, Miko, Gary and Nathan specifically discussed the

---

[8] Instead, Plaintiff contends the 2015 affidavit was unimportant to the criminal case. (Resp. at 13-15.) But Marcus's first-time testimony that he told police the night of the shooting that Murrell was running at Plaintiff while retrieving a gun was derived from that affidavit and was the centerpiece of his post-conviction petition. Nonetheless, that dispute need not be reconciled now as Defendants' motion turns on Plaintiff's use of the affidavit in this civil case.

11

testimony needed from Marcus, along with their various strategies to convince him to provide it, and the fact he was ultimately paid to provide it, Plaintiff's effort to minimize the importance of the 2015 information is decidedly unpersuasive.

In addition to minimizing the affidavit, Plaintiff downplays his own involvement in the scheme by emphasizing that the IDOC calls show he did not know about the payment in advance. (Resp. at 6-7, 11.) But Plaintiff does not explain why that is significant and in fact, it is not. It is well established that "a member of a conspiracy is liable for any co-conspirator's act committed in furtherance of the conspiracy." *U.S. v. Watson*, 525 F.3d 583, 587-88 (7th Cir. 2008). Plaintiff need not "participate in" every overt act "as long as he was aware of the aim of the conspiracy and made a knowing decision to join it[.]" *U.S. v. Brasher*, 962 F.3d 254, 261-62 (7th Cir. 2020). Defendants have submitted ample evidence that Plaintiff and his co-conspirators schemed to extract false testimony from Marcus in order to fabricate a basis for this civil suit. That includes evidence that: (1) Plaintiff and others discussed the specific testimony they needed from Marcus; (2) Plaintiff directed Miko to make sure that Marcus provided that evidence; (3) after being alerted to Marcus's reticence, Plaintiff assured Miko that he would "take care of" witnesses including Marcus from the proceeds of the civil case;[9] (4) Plaintiff talked to his mother and sister about whether he should have Miko and Gary "stand on" Marcus to get his testimony; (5) attorney Nathan told Miko it would be permissible for a "family member or somebody"[10] "to

---

[9] Plaintiff contends he did not share his certificate of innocence money with Marcus which demonstrates Marcus was not in the group of people Plaintiff intended to "take care of." (Resp. at 16.) But how much weight the Court chooses to afford that representation and whether it detracts from Plaintiff's offer to pay witnesses from the proceeds from this case will be a disputed issue for the evidentiary hearing.

[10] It is unclear whether Nathan was referencing Marcus's or Miko's family. Defendants thought Miko was describing a call with Marcus in which Nathan referenced "your family" but Miko claims it was he who talked to Nathan. (Dkt.80-4 at ¶ 8, Miko Aff.) Nonetheless, Miko contends,

do something for" Marcus after being advised of Marcus's demand for money; (5) Miko thereafter paid $1,000 for Marcus's affidavit; (6) Plaintiff offered to contribute to the payment upon being advised it had taken place; and (7) new details contained in the 2015 affidavit are the essence of this civil suit. (Defs' Memo at 9-15.) This evidence is more than sufficient to render Plaintiff fully culpable for the entire scheme.

### IV. Plaintiff's Submission Of Affidavits Explaining The IDOC Calls And Contending No Misconduct Occurred, Requires An Evidentiary Hearing To Get To The Truth.

Plaintiff submitted four affidavits and a portion of a text exchange between Gary and Marcus to support the narrative that the apparent bribe was just a misunderstanding. Specifically, Plaintiff describes a "petty scam," in which Plaintiff and Miko's lifelong friend Gary Hammond, exploited Plaintiff's need for a "more detailed" affidavit from Marcus, and convinced Miko to pay him $1,000 by pretending Marcus needed the money to avoid jail for non-payment of child support. (Resp. at 11-12).[11] These affidavits and the text message[12] raise far more questions than they answer and specifically raise the distinct possibility that Plaintiff is again attempting to deceive the Court with an elaborate cover-up of the bribe. And so, Plaintiff's request that the Court simply accept these unusual affidavits as true, without any scrutiny, is beyond the pale. Accordingly, Defendants request that the Court schedule an evidentiary hearing following a

---

counterintuitively, that Nathan was still referencing "Marcus's family" when he said "your family" could help Marcus. (*Id.*)

[11] Under Plaintiff's cramped view of hearsay, Miko's affidavit describing his conversations with Nathan and Gary are inadmissible for the same reasons he challenges the IDOC calls, but as described above, all of the evidence submitted, including Plaintiff's affidavits, warrant the Court's careful consideration.

[12] The undated text between the brothers discloses a single question and answer that Plaintiff submits shows Marcus's "shock" at the bribery allegations. (Resp. at 12-13.) This too raises more questions than answers and Defendants are seeking further evidence about this conversation and when it occurred.

limited discovery period in order to explore the truth of the submissions provided by Plaintiff and his witnesses.

## CONCLUSION

Defendants did not know what Plaintiff would do in response to their motion but his effort to explain it away by submitting sworn evidence that his lifelong friend exploited his need for the affidavit by scamming he and his brother out of $1,000 raises the distinct possibility that Plaintiff has compounded the scheme through an orchestrated cover-up. To say that this is an extremely serious matter is a serious understatement. Defendants request that the Court set a discovery schedule for the exploration of evidence pertaining to their motion for sanctions and thereafter set the matter for an evidentiary hearing so that the truth can be determined.

Date: November 24, 2020               Respectfully submitted,

/s/ James G. Sotos
JAMES G. SOTOS, Attorney No. 6191975
*One of the Attorneys for Defendants*

James G. Sotos
Jeffrey R. Kivetz
Laura M. Ranum
THE SOTOS LAW FIRM, P.C.
141 W. Jackson Blvd., #1240A
Chicago, IL 60604
(630) 735-3300
jsotos@jsotoslaw.com

# CERTIFICATE OF SERVICE

      I certify under penalty of perjury pursuant to 28 U.S.C.A. § 1746 that the foregoing is true and correct, that on **Tuesday, November 24, 2020**, I electronically filed the foregoing **Defendants' Reply Memorandum in Support of Motion for Sanctions** with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the attorneys of record on the below Service List.

***Plaintiff's Attorneys:***
Andrew M. Hale
Shawn W. Barnett
Hale & Monico, LLC
53 W. Jackson Blvd.
Suite 330
Chicago, IL 60604
T: (312) 341-9646
F: (312) 341-9656
ahale@ahalelaw.com
sbarnett@ahalelaw.com

George F. Galland, Jr.
Miner, Barnhill & Galland, P.C.
325 N. LaSalle Street, Suite 350
Chicago, IL 60654
T: (312) 751-1170
F: (312) 751-0438
ggalland@lawmbg.com

                                      /s/ James G. Sotos
                                      JAMES G. SOTOS, Attorney No. 6191975
                                      *One of the Attorneys for Defendants*